H. C. RAFFERTY,

*Plaintiff and Respondent*

vs.

NORTHERN UTILITIES COMPANY,

*Defendant and Appellant.*

(No. 2627; January 4th, 1955; 278 Pac. (2d) 605)

For the plaintiff and respondent the cause was submitted upon the brief of Wm. H. Brown, Jr., and George H. Apostolos, both of Casper, Wyoming, and oral argument by Mr. Brown.

For the defendant and appellant the cause was submitted upon the brief of Edward E. Murane and R. R. Bostwick, both of Casper, Wyoming, and oral argument of Mr. Murane.

## OPINION

HARNSBERGER, Justice

Fire destroyed or damaged a portion of plaintiff's building together with a part of its contents, and plaintiff brought his action charging that defendant had furnished and installed in the building an overhead gas furnace or heater; that plaintff had engaged the defendant to remove, check, adjust, clean and reinstall the heater; that the defendant removed the heater and during the afternoon of November 7, 1950, reinstalled the same and "between 6 and 7 o'clock P.M. on said day by virtue of a failure of said heater or furnace to function properly, the same overheated and caused a fire in said premises which burned much of the building, constituting the business premises of the plaintiff, and a substantial part of the finished products, inventory, in work process, and machinery and equipment located in the plaintiff's premises * * *. That late in the afternoon of November 7, 1950 defendant, through its employees, reported to plaintiff that said Bryant furnace was in good operating condition and the defendant's employees adjusted or set the thermostat so that said heat unit would automatically come on during the night and furnish heat whenever the temperature dropped

below the desired limit, as set on the thermostat, and would automatically cut off when the temperature again reached the desired limit."

Defendant's negligence was pleaded as follows:

"4. That the defendant was negligent in reinstalling said heater or the fixtures or thermostat pertaining thereto in such a manner as to cause or permit such heating unit to overheat and set fire to the premises in which the same was installed.

"5. That the aforementioned fire was the direct and proximate result of the negligence of the defendant in failing to properly check, adjust or reinstall said gas furnace, and by virtue thereof plaintiff suffered damages as follows. to-wit:     *     *     *     "

The defendant moved to require plaintiff to make the above paragraphs numbered 4 and 5, more definite and certain, by setting out the specific act of negligence charged against the defendant. The motion was overruled and defendant entered a general denial. The cause was tried to a jury and, in accordance with its verdict, judgment was entered in plaintiff's favor for $22,636.86, plus costs. The defendant appeals.

Appellant's brief makes it plain that the ground principally relied upon in seeking a reversal of the judgment, are concerned with the court's having given instruction No. 3, which is as follows:

"Instruction No. 3. The Court instructs the jury that the burden is upon the plaintiff to prove by a preponderance of the evidence the material allegations of his petition and particularly that by virtue of a failure of the Bryant furnance in question to function properly, the same overheated and caused the fire and that such overheating directly and proximately resulted from the negligence of the defendant in failing to properly check, adjust or reinstall said heater or a part thereof.

"    In this case negligence on the part of the defendant

may be inferred by the jury if you find, (1) that the heater was such that in the ordinary instance no injurious operation was to be expected unless from a careless construction, inspection or user thereof, and (2) that both the inspection and user was at the time of the fire in the exclusive control of the defendant, and (3rd) that the overheating happened irrespective of any voluntary action at the time by the plaintiff. It is essential that it shall appear that the heater was in the exclusive management of defendant and all the elements of the occurrence were within its control and that the overheating was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the fire may with equal fairness be attributed, the inference of negligence cannot be drawn.

" Exclusive management, control and use of the heater by the defendant, as above referred to, may have been actual or constructive and may have continued after the inspection, repair and reinstallation thereof unless it appears from the evidence that the plaintiff thereafter and before the fire assumed or exercised some management or control over the heater."

The evidence shows that in September of 1947, plaintiff purchased from the defendant two overhead, blower-top gas heaters, and the defendant installed these units in plaintiff's frame building in which there were various kinds of electrical equipment, woodworking machines, hand tools, stacks of lumber and cabinet shop merchandise, all owned and used by plaintiff in his conduct and operation of a mill and fixture business. Thereafter on several occasions the heaters failed to operate properly and in each such case the defendant was called upon and repaired or cleaned or adjusted the units. On the last of these occasions, defendant had its employees remove, repair, adjust and reinstall the apparatus. This was completed about 4:15 in the afternoon of November 7, 1950, and the defendant's employee left the building after having adjusted the

thermostatic control and reporting to plaintiff's employees that the heater was in satisfactory operating condition. There was some dispute as to whether the heater was burning when defendant's employee left the building.

Plaintiff's employees left the building at about 4:30 P.M. but plaintiff remained in his office, which was in a building opening off the shop, until 6:00 P.M., when he went into the shop, checked the doors, returned to his office, fed the dog, cleaned up and left his office. Neither plaintiff, any of his employees, nor anyone else, so far as the evidence shows, disturbed, tampered or otherwise interfered with the apparatus after defendant's employee had finished with its reinstallation and adjustment. At 6:50 P.M. the fire was reported by 'phone to the City Fire Department, which responded to the alarm.

Numbers of photographs taken after the fire furnished important evidence that the principal damage to the building was in the immediate vicinity of the heater, which had undergone the repair or adjustment referred to above. These pictures, supplemented by testimony, showed the heater to be suspended from overhead planking or crossbeams which formed a part of the roof support. The bottom of the heater was something less than six feet from the shop floor. Posts or pillars supporting the crossbeams adjacent to the heater, the crossbeam itself, the rafters and roof immediately above the heater, were shown to have been badly charred and burned, and almost directly above the unit there was a sizable hole in the ceiling and roof. What caused this hole is somewhat unclear, although the fire chiefs testified it was not made by the firemen in their efforts to extinguish the blaze, and it may have been caused by the burning of the roof at that point. In the area substantially directly below

the heater the wood portions of some machinery was charred and pieces of plywood shown to have been standing on edge were burned in the top areas but not on the bottom where they rested on the floor and the floor of the shop was not burned. The heater itself was so badly damaged by fire that the blades of its electric fan were melted. The captain of one fire company called to extinguish the blaze, testified over defendant's objection that "the most charred place was in the southeast corner directly above the heater." The captain of another fire company called ,testified over defendant's objection "that the fire started in the southeast corner of the building, at or near the heater."

There was evidence that the building had been completely rewired for electricity in 1947; that the electric motors in use were equipped with individual fuses according to their horsepower and amperage, as well as there being a general fuse for the whole electrical system; that five big "No Smoking" signs, approximately twelve inches wide by four feet in length, were hung throughout the building and a similar sign on the outside door going into the shop; that outside that door was a receptacle secured to the wall and holding water, to provide a place to put cigarettes when entering the shop; that no employees had smoked in the shop the day of the fire and were never permitted to smoke in the shop; that no one but plaintiff was in shop after 4:30 P.M., and until plaintiff left at 6:00 P.M., that there was neither paint, cleaning fluid, oily or paint covered rags or other "combustible material" in the shop on the day of the fire; that the shop was clean; that there was a certain amount of sawdust and shavings in the shop; that sawdust and shavings have to be stirred or agtitated to get enough air to burn; and that "a pile of shavings will burn over the top with a flame, and it sears its own kind of crust

over the top, like a crust of bread. Lots of times a pile of shavings will burn from the top and go completely out"; and "sawdust is worse than shavings. It packs tighter."

There was also testimony admitted over defendant's objection that in April of 1950, when the heater was faultily operating, flame was observed coming out from under the firebox at the back side of the heater—the witness indicating the location where the fire came out of the heater by pointing it out on a photographic exhibit.

It is also clear from the evidence that the heater in question was such that in the ordinary instance no injurious result was to be expected from its operation unless from a careless construction, inspection, installation or user.

The defendant's evidence tended to show the heater was equipped with safety devices; that tests of a similar heater indicated it could not have caused the fire; and that the heater was working properly when defendant's employee left plaintiff's building.

It is insisted, first, that the cause "was tried on the basis of specific negligence and not the doctrine of res ipsa loquitur" and hence no instruction regarding the rule should have been given; second, that even if the doctrine were applicable, the instruction was erroneous under both the evidence and the pleadings and, additionally, because the instruction creates a "paradox" between the first paragraph and the second paragraph, and because the third paragraph "goes completely beyond the pale of the doctrine of res ipsa loquitur".

We will discuss these criticisms in the order above stated.

From the record, we find that the question of whether or not the plaintiff had pleaded specific negligence was raised initially upon a consideration of defendant's motion that paragraphs 4 and 5, quoted above, be made more definite and certain by requiring the plaintff to set out the specific act of negligence charged against the defendant. The motion being overruled, the question was again raised early in the trial, the appellant contending that the lower court in making its ruling on the motion had said that in order to recover plaintiff must establish negligence and that the plaintiff's petition was not a pleading of res ipsa loquitur. This was disputed by the plaintiff and the discussion was concluded by the trial court's stating that the doctrine might be applied at the close of the case if the evidence warranted it. See Plunkett v. United Electric Service (1948) 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437. We are unaware of the reasons which prompted the lower court to overrule the defendant's motion.

The ruling that the doctrine might be applied if the evidence warranted it, may indicate the trial court either concluded paragraphs 4 and 5 of the petition did not constitute allegations of specific negligence, or that even though these were allegations of specific negigence, if the evidence warranted it, the doctrine might be applied notwithstanding. It may be the court understood that plaintiff was relying on the doctrine of res ipsa loquitur to establish defendant's liability, and considered that the petition therefore needed only to make general allegations of negligence. See Roselip v. Raisch, 73 C.A.2d 125, 166 P.2d 340, 345.

Although appellant says, "It is conceded as basic law and a rule of evidence that if specific allegations of negligence are alleged the doctrine can not be invoked", the authorities are not altogether in accord with this broad statement. In Vol 38, Am.Jur. pp. 1001, 1002,

§ 305, it is said: "There is a sharp conflict of authority as to whether pleading a specific act of negligence waives the pleader's right to rely upon the doctrine of res ispa loquitur * * *", and it is pointed out that it has been held that if the case is a proper one for the application of the doctrine, the pleading of a particular cause of accident in no wise loses the right to rely upon the doctrine, provided the complaint otherwise contains a general allegation of negligence and the failure to prove specific allegations still leaves the rule available; that some cases hold " * * * that where a plaintiff makes specific allegations of negligence, he must rely for his recovery upon such specific acts of negligence, and cannot recover for any other negligent acts; but he is not deprived of the benefit of the doctrine of res ipsa loquitur to establish his specific acts of negligence * * * "; and other cases hold that the mere pleading of specific negligence precludes any right to rely on the doctrine.

Also, in 65 C.J.S. 1032, 1033, 1034, S 220(11), it is stated: " * * * There is, however, considerable conflict in the authorities as to the effect of plaintiff's pleading specific acts of negligence as the cause of injury on his right to rely on or invoke the doctirne * * * ", and there are cited cases holding the doctrine applicable even where there is no allegation of general negligence whatsoever and only specific negligence is alleged.

Furthermore, this court in an earlier case took occasion to note " * * * Whether the doctrine applies in favor of a plaintiff who has alleged specific acts of negligence is a doubtful question on which the cases are not in harmony (see note, 79 A.L.R. 48) and which we need not decide. * * * " Corson v. Wilson, 56 Wyo. 218, 224, 108 P. 2d 260, 261.

It is also unnecessary in this case to decide what

may be the effect of pleading specific negligence upon the right to invoke the doctrine of res ipsa loquitur, as we cannot agree that there is any allegation of specific negligence in either paragraph 4 or 5 of the petition. It might be observed that appellant's counsel seems also to have been of this same opinion, at least at the time when he interposed the motion to make those allegations more definite and certain. He evidently then believed the allegations were not specific and the over-ruling of his motion did not necessarily imply that the criticized paragraphs were deemed to be allegations of specific negligence as the court may have and evidently did consider the pleading sufficient if the evidence should warrant invoking the doctrine of res ipsa loquitur. As respondent suggests, there is no doubt but that a dilemma confronts the pleader in a case of this nature where he intends to rely upon the doctrine, because he is uninformed as to the specific thing that caused the occurrence which resulted in his damage, yet, he must fortify his pleading against demurrer by alleging enough to show defendant's negligence. This is well illustrated in Shoemaker v. Mountain States Telephone & Telegraph Company, (1937, D.C. Idaho) 17 F. Supp. 591 and referred to in 160 A.L.R. 1453. Other cases bearing on the subject include, Dowdy v. Southern Traction Co. (1920) Tex. 219 S.W. 1092; Jianou v. Pickwick Stages System (1931) 111 Cal. App. 754, 296 P. 108; Vertson v. City of Los Angeles (1931) 116 Cal. App. 114, 2 P.2d 411; Pickwick Stages Corporation v. Messinger (1934) 44 Ariz. 174, 36 P.2d 168; Simmons v. Terrell Electric Light Company (1929), 12 S.W. 2d 1011, and numerous others. It may also be said that this is particularly true in this jurisdiction where there remains to be determined the effect of pleading specific acts of negligence upon the right to invoke the doctrine of res ispa loquitur.

Appellant's first claim that there were "* * * specific allegations of negligence to the general effect that this Bryant blower-type heater overheated and the overheating caused the fire * * * ", is an ingenious but misleading way to interpret paragraph 4 of the petition. That paragraph merely says the defendant acted in a negligent manner to cause or permit the unit to overheat and cause fire. It does not say in what specfic particular that manner was negligent.

The second contention that the petition contains specific allegations of negligence, is advanced in appellant's discussion of the quoted instruction. There counsel seems to take the position that the allegation in paragraph 5 was another specific allegation of negligence. Again, we feel the plaintiff fell far short of that particularization in specifying the way, the manner, the method or the fashion, etc., such negligent failure occurred, which is necessary to constitute the same as specific.

Finally, while the parties evidently agree that the doctrine of res ipsa loquitur is merely a rule of evidence and not one of substantive law as stated in 38 Am. Jur. "Negligence", Sec. 298, p. 994, and 65 C.J.S. 993, 994, Sec. 220 (3), the appellant infers that the doctrine is also in some manner a rule of pleading inasmuch as appellant contends that the petition does not contain the allegations necessary to put the defendant on notice that the doctrine would be invoked. This view is contrary to that set forth in the authorities last above quoted and we cannot accept it. The only authority cited to support the claim is Starks Food Market v. El Dorado Refining Co. 156 Kan. Rep. 577, 134 P.2d 1102, 1106. However, that court's own syllabus, as well as the decision itself, clearly indicates that it only decided that where the petition showed there were two or more instrumentalities, either of which may have

caused a fire, and it was not alleged that the defendant was in the sole control of all such instrumentalities, the doctrine of res ipsa loquitur should not be applied, and hence such a petition was demurrable.

In the case before us, the plaintiff has alleged facts which, if supported by evidence that was believed by the jury, would have justified the conclusion that the heater did cause the fire, and the further conclusion that the heater was under the exclusive control of the defendant. In any event, even if we were to assume that the petition is insufficient in these respects, no demurrer was interposed, and the evidence made available to the jury was ample to justify their finding that neither of the possible causes of fire suggested by the defendant and not shown to be in defendant's exclusive control, was in fact responsible for the blaze.

In furtherance of its argument that the fire might possibly have been caused by some other instrumentality than the heater, the appellant represents that in every case examined involving the doctrine of res ipsa loquitur, "the thing" or "instrumentality" which caused the injury was not in dispute and appellant incompletely states that this court in York v. No. Central Gas, 69 Wyo. 98, 118, 237 P.2d 845, 851, cited cases with approval to the effect that the "thing" which caused the harm must not be in dispute. What this court did say was " * * * The purpose of that rule is to help a plaintiff on the negligence question when the 'thing' that caused the harm is not in dispute, as in many cases, or *has been proved by a preponderance of the evidence.* * * * " (emphasis supplied) The jury's verdict based upon what we consider substantial evidence, establishes that the "thing" which caused the harm in this case "has been proved by a preponderance of the evidence".

The case of Moose-A-Bec Quarries Co., Eastern Tractor & Equipment Co., 139 Me. 249, 29 A.2d 167, 168, 169, cited in support of appellant's contention in the matter, is not helpful to him inasmuch as the Maine court found there was nothing in the record to negative the possibility that the fire in that case was the result of spontaneous combustion or of a burning cigarette carelessly discarded by a person having no connection with the defendant, while here we feel there was sufficient evidence to negative the possibilities suggested by the defendant, provided only that the jury elected to believe that evidence.

The considerations limiting the application of the doctrine or rule of res ipsa loquitur are said to be: "(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or users; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. * * * ", and the reason for the rule is thus stated ' * * * the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence, of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person." Volume IX. Wigmore on Evidence, Third Edition, § 2509, pp. 380, 381, 382, 383, 384. An overwhelming majority of courts have agreed with this statement.

The parties here, while both acknowledging its correctness, disagree as to what constitutes the "control of the party charged".

In Stanolind Oil & Gas Co. v. Bunce, 51 Wyo.1, 39, 62 P.2d, 1297, 1309, cited and relied upon both parties, it was held that while the inspection and user of the apparatus there in question, was controlled by the defendant company, its user at the time of the injury was not, and that the accident did not happen irrespective of any voluntary action at the time by the plaintiff. However, a concurring opinion in that case, in which the writer of the majority opinion acquiesced, recognized that the question of control may in some cases be an issue of fact to be decided by the jury. The writer of a second concurring opinion said he was " * * * not prepared to hold that a person injured by an apparatus, which he used in the ordinary way with care and for the purpose for which it was intended, cannot, in any case, have the benefit of the rule, on the theory that such use leaves the defendant without exclusive control of user and that the person injured voluntarily interfered, as stated among the conditions of the application of the rule in Wigmore on Evidence, § 2905, * * * " Although there was some difference of opinion within the court as to certain aspects of this case, there was a seeming unanimity of opinion that in at least some cases the question of whether the defendant was in such exclusive control as to admit of the proper application of the rule, was a matter of fact. The last opinion referred to further stated on p. 1310:

" * * * It would seem that cases which disclose that an apparatus, undertaken by defendant to be in use, and which is used in the ordinary way and for the purpose for which it is intended, by one impliedly authorized to do so, who has not assumed the risk of such use, and who uses it with due and proper care, cannot be controlled by the ordinary cases which speak of exclusive control and for that reason refuse to apply the rule under discussion. It would seem that it cannot properly be said in such case that there is a divided responsibility. The mere fact that a person so uses the appar-

atus in no way shows that he is in better position than, or in as good a position as, the owner of the apparatus to explain the accident. * * * "

Applying his statement to the instant case, it must then be said that the mere fact that the heating furnace was in use in plaintiff's building there operating and functioning automatically under the adjustment and installation made by the defendant, in no way shows that the plaintiff was in a better position or in as good a position as the defendant who made the adjustment and installation to explain the accident.

In the notes relating to the doctrine appearing in Vol. IX Wigmore on Evidence, supra, p. 389, it is said that the three opinions in Stanolind v. Bunce, supra, discussing the three requisite elements, offer a rational examination of the principle which leaves nothing to be desired, and make the case the leading one to date on the whole subject. The author further says that the qualification as to exceptional modifications of the phrasing of the second element of the rule should receive acceptance. We are not the first to follow that suggestion.

In Plunkett v. United Electric Service (1948) 214 La. 145, 36 So. 2d 704, 3 A.L.R. 2d 1437, a case in which the facts presented much the same issues as that with which we are dealing, the court agreed with the trial court that the evidence made inescapable the conclusion that the fire started with the heating unit and also said that possession and control by the defendant is not always an essential element to the applicability of the doctrine. We similarly hold in this case that the evidence is sufficient to justify the jury's implied finding that the mal-functioning of the heater caused the fire, and while we do not at this time care to go so far as to say that control is not an essential element to the applicability of the doctrine, we do hold that the

evidence warranted the further implied finding that the unit, even though installed in plaintiff's building, still remained within the exclusive control of the defendant by virtue of the qualification of the control requirement as heretofore expressed by this court and as approved by Wigmore. The conclusion is supported by Candler v. Automatic Heating, Inc. 40 Ga. 280, 149 S.E. 287, and many other recent cases, among the latest of which is Benedict v. Eppley Hotel Company, (Neb. June 25, 1954) 65 N.W.2d 224, 229. Although the facts in the last mentioned case are not analogous to those before us, it is still an important decision on the question of control of the instrumentality responsible for the injuring occurrence. There the defendant hotel had furnished a chair for its guests, which broke and caused damage when it was used. Criticizing as artificial, the decision of another court which under similar circumstances had previously held the control was not in the defendant, the Nebraska court said such a view ignored the purpose of the requirement that defendant have control, and that so far as construction, inspection or maintenance of the stool were concerned, the defendant had exclusive control, and plaintiff's action had no more legal significance as a cause of the accident than those of an innocent bystander in a typical res ipsa loquitur case.

The same may be said in this case, for this plaintiff was shown to have done absolutely nothing to interfere in any way with the functioning of the unit after it was placed in automatic operation by the defendant's employee.

From what has been said, it must be plain that we consider the petition in this case did not contain allegations of specific negligence; that the petition was sufficient in the absence of demurrer to admit to the doctrine's being invoked if the evidence justified it, and

that the evidence did in fact warrant its being invoked. It was, therefore, proper for the court to give to the jury an appropriate instruction regarding the doctrine. We now pass to a consideration of the appellant's criticism of the instruction given.

Appellant's first point that even if the doctrine were applicable, the instruction was erroneous under both the evidence and the pleading has already been answered negatively.

The so-called "paradox" between the first and second paragraphs of the instruction is based in appellant's theory that the fifth allegation of plaintiff's petition is an allegation of specific negligence and therefore it too must fail.

The final criticism, that the third paragraph of the instruction goes completely beyond the pale of the doctrine and is repugnant to it, is said to be because the jury was told there could be a constructive management, control and use of the heater. As nearly as we can ascertain, it is appellant's idea that a constructive use and control, is inconsistent with an exclusive management, use and control, and that he further intimates that a constructive management, use and control would afford plaintiff or some other person the chance to tamper with the heater or to have a better opportunity to know the cause of the occurrence or even to have actually introduced some new element of cause for the occurrence.

As to the first of these contentions, appellant has offered us no authorities, and we do not readily see wherein such purported inconsistency must necessarily lie. In consequence we make no decision in the matter.

The case of Jordan v. Coca Cola Bottling Co. 117 Utah Rep. 578, 218 P.2d 660, 664, is cited to us to

support appellant's second theory. We feel, however, that the Utah case is unfavorable to the appellant under the evidence here, for it quotes with evident approval from Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 725, 171 A.L.R. 1200, where, after discussing and pointing out circumstances of constructive control, it is said " 'the facts clearly justify the application of the res ipsa loquitur doctrine' ", and concludes

" ' * * * We have here a distinctive element of fact which breaks the conclusive continuity of control between the bottler and the consumer, when the physical possession has been in a third party, such as an intermediary vendor. To close this gap of control so as to make fairly applicable the rule of presumptive or prima facie negligence on the part of the bottler or manufacturer, we are of opinion that higher degree of proof must be made that there has been no reasonable opportunity for tampering with the bottle, or its contents, in the interim between the physical control of the bottler or manufacturer, and that of the consumer.' "

The evidence in this case is clear and uncontradicted that neither the plaintiff nor anyone else tampered with the heater, had a better opportunity to know or discover the cause of the occurrence or introduced some new element which caused the fire.

Lastly the court is said to have erred in permitting the captain of one of the attending fire companies to give as his opinion that an overhead gas heater was an instrument which, if it fails to function properly, is capable of causing a fire, and that this was true of the type heater in question. The witness had already testified that he had been with the fire department for fifteen years; was the captain of one of the city's fire companies; that after investigating the fire in this case he had determined that it started at or near the heater; that he had investigated fires where there was

no dispute but that a heater had caused the same, and that he was familiar with the type heater in question. The trial court evidently considered that this foundation qualified the witness to give the opinion testimony but it is really immaterial here whether the evidence was admitted on the theory expressed in Union Pacific Railway Co. v. Gilland (1893) 4 Wyo. 395, 34 Pac. 953, that a witness may frequently state a conclusion of fact from appearances or of his belief as to an ultimate fact, when such persuasion or belief is founded on facts within his knowledge or observation, or that it was admitted in the exercise of a sound discretion by the court which we do not criticize, as was considered in Johnson v. Hanover Fire Ins. Co., 59 Wyo. 120, 133, 137 P.2d 615, 618; See 32 C.J.S. Evidence, 99, § 458 (b) ; 20 Am.Jur. 660 § 786.

It might also well be added, that there was other testimony of much the same character which was received without any objection being made.

Under cross-examination, one of the defendant's employees said while testifying relative to what might occur if the heater was plugged up and something went wrong so that it was not working in the proper way causing the flame to come out the back that under such circumstances the heater would be dangerous. There is little difference in substance in such testimony from that given by the fire captain that the heater's failure to function could cause fire. Another defense witness testified on cross-examination that the heater's operation could be dangerous if you did not have a safety, which is tantamount to saying that an improper operation of the heater would be dangerous. Still another of defendant's witnesses said that flame coming out the back of the heater could set fire to highly combustible material. Under these conditions we do not see how defendant could have been prejudiced in any event.

Although we felt this matter should be decided upon its merits, we do not ignore the respondent's motion to dismiss the appeal because of (1) insufficiency of the court reporter's certificate to the transcript of the testimony (2) failure of appellant's brief to "refer specifically to the page or portion of the record where the question under discussion arises", (3) failure of the abstract of the record to contain a brief statement of the contents of the judgment, the assignment of errors relied on, or the contents or substance of the notice of appeal and the proof of service thereof, (4) the abstract's failure to show proper statutory steps had been taken to give this court jurisdiction or (5) to conclude the abstract with the statement—"The foregoing is a true and correct abstract (or supplemental abstract) in the above entitled cause".

The portion of our statute pertinent to the sufficiency of the court reporter's certificate is found in Section 3-5405, W.C.S., 1945, as follows:

" * * * which transcript of the testimony and rulings of the court shall be certified to by the official court reporter as being true and correct, and as containing all of the testimony offered at the trial, with the rulings of the court in admitting or excluding evidence, or in directing or refusing to direct a verdict for either party."***"

The relevant portions of the criticized certificate reads:

" * * * the foregoing is the official transcript of *proceedings and evidence* had upon the trial of the above-entitled cause, and that the same is a true and accurate transcript. " (emphasis supplied)
and

" * * * the foregoing exhibits attached hereto are all the exhibits offered in evidence and all exhibits received in evidence upon the trial of said cause, * * * "

The insufficiency of the certificate is said to lie, first, in the use of the phrase "transcript of proceedings and evidence" rather than as set forth in the statute "transcript of the testimony and rulings of the court"; second, because the certificate fails to state that the transcript contains "all of the testimony offered at the trial, with the rulings of the court in admitting or excluding evidence, or in directing or refusing to direct a verdict for either party"; and, third, because the certificate says the transcript is "true and accurate" rather than "true and correct".

These deviations from statutory requirement are said to render the court reporter's certificate null and void and of no legal effect, thus leaving the record of the testimony offered at the trial uncertified by the required reporter's certificate and that the defect was jurisdictional.

The motion to dismiss was served upon appellant's attorneys, April 8, 1954. The following day appellant prepared its supplement reference brief, which gave references to pages of the record where points discussed in its brief appeared; supplemental abstract of the record showing the judgment, specifications of error, and the notice of appeal with an acknowledgement of its service endorsed thereon signed by respondent's counsel, and a supplemental certificate of the official court reporter, the sufficiency in form of which is apparently not questioned. However, due to the absence of the court reporter, his signature to the supplemental certificate was not obtained until April 15, 1954. In consequence, the papers mentioned above were not served upon appellant's counsel until April 16, 1954 and, thereafter on April 20, 1954, the appellant filed herein its motion for permission to file the papers in this court. This prompt response of the appellant in its effort to meet and overcome the objections raised

by the motion, is claimed to be sufficient to avoid the penalty of dismissal of the appeal or even of a lesser discipline.

Snake River Co. v. Utah-Idaho Co., 57 Wyo. 425, 120 P.2d 601, offered to justify the respondent's contention that the appeal should be dismissed because the transcript of testimony was not certified, as provided in Section 3-5405 W.C.S., 1945, might be in point if we accepted respondent's view that the questioned certificate was null and void and of no legal effect, but this we cannot do nor do we accept the decision in the case as meaning that the failure to exactly or even substantially follow the statute is such a jurisdictional defect as will prevent the timely correction of the imperfect certificate by including such additional matters as may be necessary to make the certificate conform to statutory requirements — provided only, that the matters so additionally certified were in fact true at the time of the filing of the record.

Chadwick v. Nagel, 68 Wyo. 76, 229 P.2d 502 also cited by respondent in the same connection is even less in point. That decision deals with a failure to do what was required to be done, within the time limited by the statute. There is a chasm of difference between the failure to perform a required act and imperfection in its doing. Especially is this so when the imperfection lies only in failing to *say* that a thing was a fact when there is no dispute that in truth it was fact.

In George Bolln Co. v. Freeman, 42 Wyo. 375, 294 Pac. 1110, also relied upon by the respondent, the court said that where all of the errors charged involved questions arising solely upon the evidence, such errors could not be considered inasmuch as the clerk of court's certificate had not made the transcript of evidence a part of the record on appeal. There was no motion to

dismiss and there was no effort made to have the missing certificate supplied nor was it supplied. We do not say that the clerk of court's certificate could in any such event have been supplied, but merely call attention to the difference in the circumstances of the Bolln case and the instant matter. We do, however, recognize a material difference between the complete absence of any certificate making the transcript a part of the record and the absence from a court reporter's certificate of a complete enumeration of all items directed by statute to be certified where such items were in fact included in the transcript.

The respondent calls attention to Wyuta Cattle Co. v. Connell, et al, 43 Wyo. 135, 299 Pac. 279, where about one week after argument before this court, the respondent moved to dismiss the appeal on the ground the court reporter had not certified that the record contained all the *evidence*. The court pointed out that our statute does not refer to the transcript as a transcript of the evidence, but repeatedly as a "transcript of the testimony" and that frequently the word "testimony" and "evidence" are used synonymously, although technically the word "testimony" has a more limited meaning than the word "evidence". While the certificate was held to be in substantial compliance with the statute, counsel here evidently considered the case as not unfavorable to his position because he says the certificate in this case is subject to additional insufficiencies. In passing, however, we note that what the court said with respect to the ordinary interchange in use of the two words, would seem to dispose of the respondent's objection to the substitution of the word "evidence" for the word "testimony".

We do not see how Kendrick v. Healey, 26 Wyo. 261, 183 Pac. 37, is very helpful to respondent's motion. The court answered one criticism of the reporter's

certificate by holding, in effect, that the word "of" *as used* in the certificate was the exact equivalent of the words "as containing" as they appear in the statute. It also held that upon a proper showing a record might be withdrawn for amendment if the proposed amendment would cure the suggested defect, and if the corrected record would show it was filed within the statutory time. But respondent says that even if the appellant seeks to withdraw the record on appeal in order to amend the challenged certificate, the application should be denied, because the amended certificate would then necessarily show on its face that it was not filed within the statutory time. This is evidently founded in the theory that in such a case the date of the filing of the amendment would be considered as the date upon which the certificate was filed. To agree with such a contention would rob the amendment of integration with the certificate and give to it a separate and independent character all its own. This is neither reasonable nor logical and is contrary to the intendment of an amendment in a case such as this, where conforming the certificate to statutory requirement involves nothing more than having it state affirmatively what was, in fact, the truth at the time the original certificate was filed.

Such an addition to the certificate by amendment does nothing more than make it a part of a subsisting instrument. It does not change the character or the effective filing date of the instrument of which it becomes a part.

The appellant here did not seek leave to withdraw the record in order to amend it, but by motion sought from us permission to file herein what is termed its "Reference Supplement To Brief Of Appellant", a "Supplemental Abstract of Record", and a "Supple-

mental Certificate of Official Court Reporter". The motion was granted May 6, 1954.

In so far as the court reporter's certificate is concerned, we find no substantial difference in securing the withdrawal of the record for the purpose of amending the certificate by setting forth therein additional items which were actually within the transcript being certified, and, as was here done, seeking the permission of this court to file and filing a "Supplemental Certificate", which certificate, in effect, amounts to an amendment of the questioned certificate.

This court lately held in English v. Smith, 70 Wyo. 50, 244 P.2d 807, that the timely filing of the record on appeal is jurisdictional and it therefore dismissed the appeal because the date appearing on the clerk's certificate indicated the record on appeal was filed after the expiration of the time within which its filing was required. When it was discovered that there was an error in the date of the clerk's certificate, the error was brought to attention by both a petition and a motion, the sum of which was considered by the court to be a request to amend the record. Indicating that the matter was one addressed to the court's discretion, the case was reinstated; (English v. Smith, 71 Wyo. 1, 253 P.2d 857). See also McGinnis v. Beatty, 27 Wyo. 287, 196 P. 311. The decision in the English case we feel correctly recognizes the propriety of permitting amendment of the record on appeal in order to make its content conform to facts.

In Riordan et al v. Horton et al, 16 Wyo. 363, 369, 94 P. 448, 449, this court observed that we have no statute specially regulating amendments in proceedings in error, but that such amendments by analogy should conform as near as may be to the provisions of the statute with reference to amendments of pleadings

and proceedings in the district courts. Those provisions permit amendments which do not substantially change the cause of the action. If the same analogy holds true upon direct appeal, the amendment of matters incident to such appeal would appear to be proper if the amendment would amount to one of form rather than of substance. Correspondingly, if we follow the reasoning of this court in No. Laramie Land Co. v. Hoffman, 27 Wyo. 271, 281, 283, 195 P. 988, 989, 991, the reformed certificate should be accepted as properly and timely certifying the transcript of testimony. In that case, proceedings in error were first dismissed (see No. Laramie Land Co. v. Hoffman, 26 Wyo. 327, 184 P. 226) because the petition in error had been signed only by attorneys who were not admitted to practice in this state. Rehearing was granted when it was shown that in fact such attorneys had been associated with local counsel in the trial below; that local counsel had, in fact, filed the petition in error—had directed the issuance of summons and had signed the brief, although by inadvertence, local counsel had failed to also sign the petition in error itself. So there was a case where the petition in error, as filed, did not comply with the statute then in effect (see Sec. 4422 W.C.S., 1910, now repealed) which required that every pleading must be subscribed by the party or his attorney. On rehearing the court held that the petition in error was not a nullity; that the omission was a formal defect which was not juridictional, and that it was one which, in the court's discretion, might be cured by amendment, even though such amendment was made after expiration of the time for bringing proceedings in error.

We therefore hold, that where a transcript of testimony is incorporated in the record on appeal and the court reporter's certificate thereto fails to enumerate all of the items which are, in fact, included within that

transcript, and which matters are directed by our statute to be certified by the reporter as being within the transcript, the failure to mention all such items in the certificate is not such a jurisdictional defect as may not, in the court's discretion in a proper case, be permitted to be cured by amendment which shows the true facts.

This, of course, disposes of the respondent's criticism of the reporter's certificate.

We find there is substance to the respondent's charge that appellant disregarded rule 14, which directs that briefs shall refer specifically to the page or portion of the record where the question under discussion arises. On the other hand, the appellant was commendably prompt in attempting to supply the deficiencies by requesting permission to file and filing its "Reference Supplement to Brief of Appellant", which furnished the omitted reference to pages and portions of the record discussed in its brief. The question was considered in Simpson v. Occidental Building & Loan Ass'n., 45 Wyo. 425, 426, 427, 19 P.2d 958, where it was said, that when the rule was disregarded the court may decline to consider the questions sought to be raised. Our rule 37 which sets forth requirements for abstracts of the record was also considered, and the appellant not having offered nor making any effort to cure the defects of the abstract, the appeal was on motion dismissed for disobedience of the rule.

The further deficiencies of the abstract in this case of failing to give a brief statement of the contents of the judgment, the assignment of errors relied on, the contents or substance of the notice of appeal, together with the absence of the prescribed concluding statement vouching for its verity, all add to the seriousness of appellant's failure to observe the two rules involved.

Under these circumstances, were it not for our extreme reluctance to dispose of matters brought before us for review—except upon their merits and the alert and prompt action taken by appellant in supplying the deficiencies and curing the defects—, there would be little justification for our further tolerating noncompliance with these requirements. Now that this court has again voiced its opinion regarding nonobservance of the requirements here dealt with, it may be expected that the same lenient attitude will not be continued by this court. See concurring opinion in Wyodak Chemical Co. v. Board of Land Com'rs., 51 Wyo. 265, 283, 65 P. 2d 1103, 1109.

In consequence of what has been said, we will deny the respondent's motion to dismiss this appeal and affirm the judgment as rendered below.

*Motion to dismiss denied, judgment affirmed.*

RINER, C. J. AND BLUME, J. concur