WESTERN FIRE INSURANCE COMPA-
NY and U. S. Fire Insurance Company,
Appellants (Plaintiffs),

v.

TIM FORCE TIN SHOP, INC., and
Rognstad Construction Co.,
Appellees (Defendants).

No. 5066.

Supreme Court of Wyoming.

Aug. 9, 1979.

Cameron S. Walker, Casper, signed the brief for appellants and appeared in oral argument on their behalf.

Barry G. Williams, Casper, signed the brief and appeared in oral argument on behalf of appellee Tim Force Tin Shop, Inc.; and J. E. Vlastos, Casper, signed the brief and appeared in oral argument on behalf of appellee Rognstad Construction Co.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

In this appeal, the principal question revolves around the applicability of the doctrine of res ipsa loquitur to the facts forming the basis of appellants' negligence claim. The case was tried to a jury, resulting in a special finding of "no negligence" on the part of either of appellees, upon which the district court entered judgment for appellees.

A negligence action was filed by Western Fire Insurance Company and U. S. Fire Insurance Company, appellants, as subrogees of homeowners, Mr. and Mrs. Edward E. Murane (Muranes), whose home was damaged[1] by a fire allegedly caused by a

1. The complaint alleged that the appellant insurance companies had paid a total of $28,-553.88 in satisfaction of the Muranes' claims against them and these are the damages they asserted against the appellees.

space heater used by the Tim Force Tin Shop, Inc., and Rognstad Construction Co., appellees, in the course of remodeling and enlarging the home. Appellants assert that the district court erred: (1) in refusing to give two offered instructions on the theory of res ipsa loquitur; (2) in giving two fairly standard negligence instructions in the context of a res ipsa loquitur case, (3) in refusing to allow the testimony of an insurance adjuster who investigated the fire, about statements made by employees of appellee Rognstad, (this refusal, appellants assert, was erroneously based on appellees' assertions that the witness was not properly listed as a witness in the trial court's pretrial order, and that the purpose of the offered testimony was to impeach testimony that was not given), and (4) in failing to allow appellants to introduce certain answers to interrogatories into evidence for impeachment purposes.

We will affirm.

The Muranes contracted with several persons to design and construct an addition to their home in Casper, Wyoming. Gerald Deines, an architect, prepared the plans and drawings. Appellee Rognstad was to do the building and carpentry, appellee Tim Force the duct and sheet metal work, Davidson Plumbing and Heating, the plumbing and heating, and Delcon Electric, the electrical work.

On January 23, 1974, when the addition to the Murane home was about 65% complete, a fire broke out which destroyed much of the new addition and did damage to the preexisting portion of the Murane home as well. Three days before the fire occurred a Universal 3500 Space Heater was brought to the worksite by appellee Rognstad to provide warmth for the workmen and to heat the new addition. The heater was fueled by propane which was fed to the heater through a ten-foot rubber hose from a refillable propane bottle. In order to operate the heater, it was necessary to plug the electrical cord of the heater into a live electrical outlet, open the valve of the propane bottle, turn on and set the thermostat. On the day of the fire, the thermostat was set so the heater would automatically come on when the temperature in the addition fell below 55° F. and then go off again when the work area was warmed to the proper temperature. At the beginning of the workday, approximately 8:00 a. m., the space heater was started up by one of Rognstad's employees. At this time it was placed in the new addition in a bathroom which measured 5′6″ × 11′, so that the blowing end pointed south. The propane bottle was placed adjacent to and just east of the heater. Just to the south and east of the position where the heater was located was a crawl-space door through which workmen could gain access to the under part of the new addition. The drawing which follows accurately depicts the arrangement above described although it is not to scale.

The factual matters which are important to this case are depicted: (1) (shaded area) preexisting Murane residence; (2) (unshaded area) addition which included bathrooms, closets and storage areas[2]; (3) a small wooden door in the floor of the new addition which provided access to the crawl space beneath the house; (4) location of the space heater in the usual position in which it was placed by appellee Rognstad's employees (it was so situated, because the heat emanated out of the heater as indicated by the arrows coming out of (4), and this end of the heater had to be at least six feet from anything combustible and was never to be pointed in the direction of the propane fuel source); (5) propane tank which served as the fuel source for the heater; and (6) circle enclosing an "X" is the apparent location where the fire began at a location on the wall of the preexisting home from which the siding had been removed exposing tarpaper.

On the day of the fire, after starting up the heater, the Rognstad employees first removed snow from the roof of the addition and then did some sheet rocking inside the addition until midmorning. From mid-

---

2. The addition was not complete and the rough sketch does not include interior walls et cetera, because they are of no importance factually.

morning until lunch, all three Rognstad employees were on the roof of the addition doing shingling. After lunch, they continued to work on the shingling. Between 2:00 and 2:30 p. m., Don Robbins, an employee of appellee Tim Force Tin Shop, arrived to do some measuring for the sheet metal duct work for the new addition. Roy Amick, a Rognstad employee, came down from the roof and talked with Robbins. Lighting within the addition was provided by a string of lights with wire cages protecting the bulbs. The source of electricity was from outside the addition but two or three days before the fire, Delcon, the electrical contractor, installed a temporary, but "hot", outlet in each room of the addition. Lighting was provided to the crawl space beneath the preexisting structure by a permanent light fixture and to the crawl space beneath the new addition by a "plumber's helper,"—a bulb in a wire cage attached to a long extension cord—provided by Davidson, the plumbing contractor. Amick, the Rognstad employee, removed the access cover to the crawl space and connected the plumber's helper to an electrical power source outside the addition. Robbins, the Tim Force employee, then entered the crawl space to do his work. Amick returned to his work on the roof. Robbins remained in the crawl space about ten minutes, left his work there without unplugging or turning off the plumber's helper, exited the addition and spoke a farewell to the Rognstad employees who were still on the roof. Shortly after Robbins left at approximately 3:00 p. m., the Rognstad employees became aware that a fire had started in the addition. They climbed down from the roof and notified Mrs. Murane.[3] They also decided to attempt to remove the propane bottle from the addition but could hear the hose connecting the bottle to the heater burn through and come loose. The fire department was notified at 3:17 p. m. and fire fighters arrived at 3:20 p. m., about 7 minutes after the fire was discovered.

The testimony of all Rognstad employees indicated that the heater was positioned as shown in the drawing, supra, and that no Rognstad employee moved it. Robbins, the Tim Force employee, corroborated the position of the heater as shown on the drawing and stated that he did not move the heater during the short time he was in the addition doing his work. Roy Amick testified that, in cleaning up after the fire, a spot on the floor could be noticed which was lighter than the surrounding area and had an imprint which indicated the location of the heater as described above and as shown in the drawing.

■ We agree with appellee that the district court properly refused appellants' proffered res ipsa loquitur instructions. The appellants offered two instructions, which were refused:

### Instruction "D"

"In this case, negligence on the part of a defendant may be inferred by the jury under the doctrine of 'res ipsa loquitur', if you find:

"1. The thing or instrumentality which caused the damage must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection or user; and

"2. Both the inspection and user must have been at the time of the injury in the control of the party charged; and

"3. The injurious occurrence or condition must have happened irrespective of any voluntary act at the time by the party damaged.

"The requirement of 'exclusive control' may be met where a defendant was the last person to have exclusive control of the apparatus, and neither the plaintiff

---

3. Mrs. Murane returned home at the time that Robbins was leaving. She came outside after taking some packages into her home to inquire of the Rognstad employees who Robbins was. She then went back inside and, about five minutes later, saw flames in the addition. She immediately began closing doors, et cetera, and taking silk-shaded lamps out of the house. One of the Rognstad employees came to the door and told Mrs. Murane to call the fire department. She told him she was busy and that he could call, which he did.

nor any other person tampered with such apparatus."

Instruction "E"

"In this case, negligence on the part of defendants may be inferred by the jury under the doctrine of 'res ipsa loquitur', if you find:

"1. The thing or instrumentality which caused the damage must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection or user; and

"2. Both the inspection and user must have been at the time of the injury in the control of the parties charged; and

"3. The injurious occurrence or condition must have happened irrespective of any voluntary act at the time by the party damaged."

The appellants' instructions were properly refused, because the evidence presented in the trial simply would not warrant giving them to the jury under an application of the doctrine of res ipsa loquitur as expressed by this court. More simply stated, there was a failure of proof of negligence or the prerequisites for application of the res ipsa loquitur doctrine. We are fortunate, for our jurisprudence in this area consists of a series of soundly reasoned cases rather than the cacophonous mass of decisions that make up the general body of law in this area.[4]

*Stanolind Oil & Gas Co. v. Bunce,* 1936, 51 Wyo. 1, 62 P.2d 1297, involved injuries to the person of an employee of Stanolind Oil which occurred while he was lighting a hot water heater contrary to directions that were posted on the heater. This court isolated the requirements which must be fulfilled before the doctrine may be applied:

" '(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2)

Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.

\*   \*   \*   \*   \*   \*

" 'It may be added that the particular force and justice of the presumption, regarded as a rule throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' " Id., at 62 P.2d 1301–1302.

And to clarify the procedural effect of the use of the doctrine which was perhaps cast in doubt by the use of the word "presumption" in the foregoing quotation:

" 'The accurate statement of the law is not that negligence is presumed but that the circumstances amount to evidence from which it may be inferred by the jury. In cases where the duty is not absolute, like that of the common carrier to exercise the highest care and skill in regard to the safety of a passenger who has committed himself to its charge, but arises in the ordinary course of business, it is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn.' " Id., at 62 P.2d 1302.

In its final disposition, this court in *Stanolind* focused on the failure of the plaintiff to bring his case squarely within two of the three numbered prerequisites above. And

4. Dean Prosser described this uncertain "doctrine" as one " \* \* \* which has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely." Prosser, Torts, p. 213, § 39 (4th Ed. 1971). See *North Central Gas Co. v. Bloem,* Wyo.1962, 376 P.2d 382, 384.

the court added that the doctrine should not be applied " 'if there is any other reasonable or probable cause from which it might be inferred there was no negligence at all.' " Id., at 62 P.2d 1308. And finally, this court added what is perhaps the most significant limitation on the use of this narrowly applicable doctrine:

> "The theory of the rule under consideration keeps in mind the practical notion as applied to human affairs that when the defendant has the exclusive management and control of the agency which inflicts the injury, the plaintiff is usually in no position to prove the particular circumstances which made such agency act as it ordinarily should not, while the defendant can and should produce evidence in explanation. Consequently, if the circumstances do not show or suggest that defendant should have that superior knowledge, or if the plaintiff himself possesses equal or superior means of explaining the occurrence, the rule may not properly be invoked. * * *" Id., at 62 P.2d 1308.

In another later important decision on the doctrine of res ipsa loquitur, this court considered its applicability in an instance where a heating device caused a fire which destroyed property. *Rafferty v. Northern Utilities Company,* 1955, 73 Wyo. 287, 278 P.2d 605. In that case the jury was instructed thus:

> " 'Instruction No. 3. The Court instructs the jury that the burden is upon the plaintiff to prove by a preponderance of the evidence the material allegations of his petition and particularly that by virtue of a failure of the Bryant furnace in question to function properly, the same overheated and caused the fire that such overheating directly and proximately resulted from the negligence of the defendant in failing to properly check, adjust or reinstall said heater or a part thereof.
> " 'In this case negligence on the part of the defendant may be inferred by the jury if you find, (1) that the heater was such that in the ordinary instance no injurious operation was to be expected unless from a careless construction, inspection or user thereof, and (2nd) that

both the inspection and user was at the time of the fire in the exclusive control of the defendant, and (3rd) that the overheating happened irrespective of any voluntary action at the time by the plaintiff. It is essential that it shall appear that the heater was in the exclusive management of defendant and all the elements of the occurrence were within its control and that the overheating was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the fire may with equal fairness be attributed, the inference of negligence cannot be drawn.

> " 'Exclusive management, control and use of the heater by the defendant, as above referred to, may have been actual or constructive and may have continued after the inspection, repair and reinstallation thereof unless it appears from the evidence that the plaintiff thereafter and before the fire assumed or exercised some management or control over the heater.' " Id., at 278 P.2d 606–607.

In the *Rafferty* case, the court held that the doctrine was properly applied and, in doing so, affirmed the requirements set out in *Stanolind Oil & Gas Co. v. Bunce,* supra. In so applying the doctrine, the court converged upon the wealth of facts presented at trial which pointed very clearly to the heating device as the cause of the fire. It was claimed by the defendants in *Rafferty* that the "thing" which caused the fire was in dispute. In an earlier case, *York v. North Central Gas Co.,* 1951, 69 Wyo. 98, 118, 237 P.2d 845, 851, a rule was established that the "thing" which caused the harm must not be in dispute. The basis of such a rule was explained to be:

> " '* * * to help a plaintiff on the negligence question when the "thing" that caused the harm is not in dispute, as in many cases, or *has been proved by a preponderance of the evidence.*' " Id., at 278 P.2d 610. (Emphasis in original.)

The court in *York* held that the "thing" which caused the harm had been proved by

a preponderance of the evidence. Moreover, the other potential causes of the fire suggested by the defendant in that case had been negatived by the plaintiff's evidence. Id., 278 P.2d at 610. The court went on to find that all the other requisites of the instruction given to the jury were well grounded in the evidence.

The crystallizing of Wyoming case law in this area was again enhanced by this court's decision in *North Central Gas Company v. Bloem,* Wyo.1962, 376 P.2d 382. The court there held:

"* * * We are inclined to think that some of the difficulties in the field have arisen because tort cases were often tried to a judge at the time of the original of the concept whereas now they are most frequently tried before juries. In the jury trial of such cases one of three situations may arise: (1) There will be a failure of proof as to one or more of the prerequisites; (2) the evidence will clearly establish that on the basis of common experience the doctrine should apply; or (3) there will be substantial evidence, subject to conflicts or contrary inferences, which shows the prerequisites have been met. In the first of these the court should forbid reference to the subject; in the second the court should instruct that the doctrine applies; and in the third the jury should determine under proper instructions whether or not the prerequisites have been met." Id., at 376 P.2d 384.

The cases discussed above are fleshed out by the additional decisions in a subsequent chronological order, *Sayre v. Allemand,* Wyo.1966, 418 P.2d 1006; *Hall v. Cody Gas Company,* Wyo.1970, 477 P.2d 585; and *Langdon v. Baldwin-Lima-Hamilton Corporation,* Wyo.1972, 494 P.2d 537.

The problem with appellants' contention that a res ipsa loquitur instruction should have been given in this case is that the evidence at trial will not enable them to get past the opening phrase of the first requirement, proof of "* * * the thing or instrumentality *which caused the injury* * * *"*. Appellants proved that the heating device was present in the construction area where the fire began, they proved that the heater was in use the day of the fire, and that only the defendants had access to the construction area and the heater on the day of the fire. However, there was little or no proof that the instrumentality which caused the fire was the heater. The only evidence in that regard was an opinion by an assistant to the fire chief who investigated the fire that the pattern of the fire was consistent with one started by a space heater of the kind involved here.[5] However, as shown by this drawing, the heater was not proved to ever have been pointed at the place on the wall where the fire started or to have been moved by any particular defendant. At best, appellants' evidence created only a suspicion that the space heater was the culpable instrumentality. We can only conclude that the cause of the fire was unknown and hence, in dispute, and that the evidence presented did not identify the "thing" which caused the harm by a preponderance of the evidence.[6] *Rafferty v. Northern Utilities Company,* supra

[5]. Only a very limited investigation into this fire was conducted and, at that, it focused on whether arson was involved. No investigation report was filed by the fire department and the principal investigator for the fire department was not called as a witness.

[6]. Here it was up to the trial court to determine if the prerequisites for application of res ipsa loquitur were met. They were not. The phrase "a preponderance of the evidence" simply means that the thing sought to be proved is more probably true than not. Pattern Jury Instructions for Kansas, § 2.10 and comments (1966); 33 Words and Phrases, "Preponderance of Evidence," (1971). It is not a balancing of possibilities or probabilities. Appellants had the burden of showing the instrumentality which caused the fire either was not in dispute or was proved by a preponderance of the evidence. The only testimony going to this issue was the testimony that the fire pattern was consistent with having been caused by the heater. Although this evidence was admitted without objection, the mere suggestion of a possibility which is remote and speculative cannot be made to take the place of substantial evidence. *Edwards v. Harris,* Wyo.1964, 397 P.2d 87, 91. And see, *Caillier v. City of Newcastle,* Wyo.1967, 423 P.2d 653, 656.

at 278 P.2d 610; 65A C.J.S. Negligence § 220.11; See, 2 Speiser, *The Negligence Case, Res Ipsa Loquitur,* § 19:3, pp. 106–107 (1972). Thus, there was a failure to prove one of the prerequisites [7] and it was proper for the trial court to refuse the proffered res ipsa loquitur instructions. *North Central Gas Company v. Bloem,* supra, 376 P.2d at 384.

■ Appellants' next assertion is that giving Instruction 12 is reversible error:

### Instruction 12

"The mere fact that an accident occurred and that a party has sustained damage is not in itself, evidence that any person, company or party was negligent. A construction company is not an insurer and has no duty to use and maintain accident proof facilities or equipment. Proof of nothing more than that a particular occurrence or event would not have occurred had the equipment used been designed differently is insufficient to establish negligence on the part of defendant Rognstad Construction Company."

This claim of error is premised primarily upon the success of appellants' main argument that res ipsa loquitur applies. Since we have already decided that the district court properly determined that res ipsa lo-

quitur was inapplicable under the circumstances of this case, we need say little more. We would agree the instruction is ineptly worded, in that the last two sentences are not necessary to explain the well-known concept expressed in the first sentence, complete in itself. Appellants neglected to provide us with authority or cogent argument specifically demonstrating how the instruction was erroneous or how it operated to their prejudice. The second sentence of the instruction is not an incorrect statement of law, and we perceive no prejudice to appellants. The third sentence is likewise not a misstatement of the law. There was much evidence in the record concerning the design and manner of functioning of the space heater. Design was really not an issue, so we do not view the third sentence as in any way prejudicial to appellants. *Marken v. Empire Drilling Company, Inc.,* 1956, 75 Wyo. 121, 135–140, 293 P.2d 406; Wyoming Rules of Civil Procedure, Rule 61; and see, *MacManus v. Getter Trucking Co.,* Wyo.1963, 384 P.2d 974, 975.

■ Appellants assert that the giving of Instruction 11 was reversible error:

### Instruction 11

"A construction company, such as defendant. Rognstad . Construction Company,

7. We note in passing that there were a number of problems with the appellants' proof. In the first instance, we point out that fires are not the sort of "unusual" occurrence that call into play res ipsa loquitur. See Prosser, Torts, p. 216, fn. 4, § 39 (4th Ed. 1971). *Northwestern National Insurance Co. v. Raid Quarries Corp.,* Iowa 1977, 249 N.W.2d 640, 644–645. In addition, under the circumstances presented here, appellants were in as good a position to determine the cause of the fire as were defendants. *Stanolind Oil & Gas Co. v. Bunce,* supra, 62 P.2d at 1302; Prosser, Torts, p. 225, § 39 (4th Ed. 1971). The record is clear that no detailed investigation was made at the fire scene and appellants made no attempt to ascertain the cause of the fire. The fact that there are two defendants raises an important question of the applicability of res ipsa loquitur, which we need not respond to today. But see Prosser, Torts, p. 221, § 39 (4th Ed.); *Jackson v. H. H. Robertson Co., Inc.,* 1978, 118 Ariz. 29, 574 P.2d 822, 825–826. Appellees asserted that specific negligence was alleged by appellants (someone either placed or moved the heater so

that it caused the fire) and thus they were precluded from relying on res ipsa loquitur. We do not answer this question since doing so is unnecessary in the context of this case. But the question is a thorny one that merits close scrutiny in cases where res ipsa loquitur is to be applied. See *Rafferty v. Northern Utilities Company,* supra at 278 P.2d 610–613; Prosser, Torts, p. 231, § 40 (4th Ed. 1971). As to all matters discussed in this footnote, see generally, Anno., "Res Ipsa Loquitur in Actions Against Owner or Occupant of Premises for Personal Injury, Death, or Property· Damage Caused by Fire," 8 A.L.R.3d 974 (1966). In addition, even assuming that the doctrine was applicable under the facts of this case, appellees presented much evidence showing they were not negligent, i. e., the testimony unanimously indicated that the heater was situated in the work area in a generally safe manner. In such circumstance, the inference of negligence is overcome and a trial judge would be correct in refusing a res ipsa loquitur instruction. 2 Speiser, *The Negligence Case, Res Ipsa Loquitur,* § 19:9, pp. 115–117 (1972).

and/or a sheet metal contractor, such as defendant Tim Force Tin Shop, is required to exercise that standard of care in the performance of its work which an ordinarily prudent person would exercise under the same or similar circumstances. In determining whether or not any such defendant exercised the required standard of care necessary, you may consider whether the accident or occurrence involving plaintiffs was reasonably foreseeable under all the circumstances of this case. Neither defendant is required to safeguard against occurrences or events that cannot be reasonably expected under the circumstances, which arise because of exceptional or unusual circumstances or to anticipate every possible circumstance that may cause injury or damage."

In their brief, appellants assert it is a totally inappropriate statement of the law of foreseeability.[8] Appellants provide no authority or cogent argument which persuades us that the instruction is either a misstatement of law under the circumstances of this case nor that, if inaccurate in some regard, it operated to the prejudice of the appellants. *Marken v. Empire Drilling Co., Inc.,* supra.

█ Appellants assert the trial court erred in refusing to allow the testimony of a witness, Jerry Murray. Murray is an insurance adjuster who investigated the fire for the appellants. He was offered as a witness to testify that employees of appellee Rognstad told him that the heater was customarily placed on the crawl-space access door rather than in the middle of the room as testified to by those employees. Appellees objected on the grounds that (1)

Mr. Murray was not listed as a witness in compliance with the court's pretrial conference order; (2) counsel for appellants wanted to use the witness for impeachment purposes, and the impeachment question was not properly set up in the preceding testimony, and (3) alternatively, that the evidence sought to be introduced was not impeachment at all but of a substantive nature. The briefs provide only the scantiest of assistance to the court in determining this question. In the trial court only the scantiest of assistance was rendered to the trial judge to aid him in his ruling.[9]

The problems with appellants' attempt to present this evidence are enormous. In this instance, the witness whom appellants sought to impeach testified that the heater was customarily located in the middle of the room (as indicated in drawing) and further:

"Q. To your knowledge was the space heater ever placed over the crawl space door?

"A. No."

The witness was never asked about any prior statements he may have made. The witness was called by the appellants and, at the time he testified to the above, was on direct examination. Where a witness is to be impeached, he must at least be asked about the matter before such is proper:

"For this purpose [impeachment], the making of the previous statements may be drawn out in cross-examination of the witness himself, or if on cross-examination the witness has denied making the statement, or has failed to remember it, the making of the statement may be proved by another witness." (Footnote

---

**8.** For this argument, appellants rely totally upon two cases, *Connet v. Fremont County School District No. 6,* Wyo.1978, 581 P.2d 1097, and *Endresen v. Allen,* Wyo.1978, 574 P.2d 1219. In both cases summary judgments in favor of the defendants were reversed by this court. Neither involved an instruction such as that in question here. Both talked peripherally about foreseeability, but neither can be read to stand for the proposition that the instruction given in this case is reversible error.

**9.** " * * * The profession of advocacy—be it art, science or game (cf. Contested Advocacy,

Nizer, N.Y.L.J., 4/10, 4/11, 4/12, 1967—consists of more than dogmatically taking a position or throwing out a contention. Proper advocacy requires that a contention be supported by a recitation of precise and detailed relevant facts; by the citation, if any, of pertinent authority; and by cogent and persuasive argument based upon analogy or other classical form of arriving at conclusions * * * to crystalize the matter to be determined." *People v. Rosenfeld,* 1969, 61 Misc.2d 72, 304 N.Y.S.2d 977, 984.

omitted.) McCormick, Evidence, p. 67, § 34 (2nd Ed. 1972); 3 Weinstein's Evidence, ¶ 607[06] (1978).

Without belaboring the point, we can only conclude that appellants failed to establish proper foundation to impeach the witness in question with the alleged prior inconsistent statement. If the evidence was to be admissible at all, it would have been as substantive evidence. Appellees complain that they did not have notice of this testimony in accordance with the pretrial order. The record supports this finding and it is in no way denied by appellants. Appellants' only ground for admissibility was that the offered testimony was proper impeachment which we have determined it was not. The trial court could properly deny the admissibility on this ground. We are unconvinced that such denial was an abuse of discretion. *Ford Motor Company v. Kuhbacher,* Wyo. 1974, 518 P.2d 1255, 1260; *Hunt v. City of Laramie,* 1919, 26 Wyo. 160, 181 P. 137.

Finally, appellants assert that the trial court committed reversible error in failing to allow introduction of certain interrogatories. Again there is a dearth of cogent argument and authority. At best, appellants only assert that the interrogatories are admissible under Wyoming Rules of Evidence, Rule 801(d)(2).[10] Appellants failed to demonstrate in the trial, as they do here, how Rule 801(d)(2) applied to the offered evidence. The person who signed the interrogatories was never called as a witness and other serious foundational gaps are evident. See McCormick Evidence, pp. 121–125, § 53 (2nd Ed. 1972). Admission or exclusion of evidence, whether for lack of foundation or other reason, is within the sound discretion of the trial court. *Peterson v. State,* Wyo.1978, 586 P.2d 144, 154; *Webber v. Farmer,* Wyo.1966, 410 P.2d 807.

Affirmed.

**10.** Rule 801(d)(2), W.R.E.:
"(2) *Admission by party-opponent.* The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make

a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."