## SLANE v. CURTIS
(Nos. 1591, 1592; Apr. 7, 1930; 286 Pac. 372)
(Rehearing Denied May 21, 1930)

For the appellant, H. D. Curtis, there was a brief by *Wm. L. Simpson* and *C. W. Axtell,* both of Thermopolis, and oral argument by *Mr. Axtell.*

For the appellant and respondent, W. T. Slane, there was a brief by *C. R. Ingle,* of Thermopolis, and oral argument by *Mr. Ingle.*

Answer brief of *C. R. Ingle* for respondent Slane.

*Wm. L. Simpson* and *C. W. Axtell* for appellant Curtis.

BLUME, Chief Justice.

On September 2, 1925, W. T. Slane, hereinafter mentioned as the plaintiff, leased Lot 21 in Block 2 in the town of Thermopolis, Wyoming, upon which a building, containing two stores, was situated, to C. A. Mulock and Mary Mulock for the term of fifteen years. The lease was in the ordinary form and contained the usual provisions that the lessees had received the premises in good order and condition and that at the expiration of the term mentioned

in the lease they would yield up the premises to the lessor in as good order and condition as when they were entered upon by the lessees, loss by fire and inevitable accident and ordinary wear and tear excepted, and that they would keep the premises in good repair during the term of the lease at their own expense. At the same time a contract was entered into for the making by the lessees, at their expense, of certain repairs and alterations in the building, with the view to fitting it for a theater. It was agreed that at the expiration of the lease and contract the electric wiring, plumbing, plumbing fixtures, heating apparatus, radiators, and the picture machine booth should become the property of the lessor, but that the lessees should have the right to remove opera chairs, moving picture machines, accessories thereof, draperies, rugs, scenery, picture screens, mirrors, electric fans, ventilating systems, electric fixtures except wiring, mats, and musical instruments. The alterations contemplated were completed in November, 1925. Mulock and his wife continued to occupy the premises until June, 1926, when H. D. Curtis, apparently on behalf of others, took over the property and held it until February, 1927. On February 23, 1927, Curtis, hereinafter mentioned as the defendant, removed from the building the heating plant, plumbing, certain wiring and electric switches, doors, windows, including transoms and transom glasses, and other miscellaneous items—all affixed to the building. An action was thereupon commenced by the plaintiff to enjoin the defendant from continuing to remove property from the building, and to recover damages in the sum of $3000 for property already removed. Upon the trial of the case the court refused to allow any damages and upon appeal to this court the judgment was reversed. Slane v. Curtis, 39 Wyo. 1, 269 Pac. 31, 270 Pac. 541. The cause was sent back for trial for the purpose of determining the damages. Upon the retrial of the case the court awarded the plaintiff judgment in the sum of $1536.21. Of that amount, $858.80 was allowed for removing the doors, windows, etc. From

this judgment both parties have appealed, the defendant from that portion which allowed the amount above mentioned for the removal of the doors, windows, etc. Both appeals were heard together.

■ It is claimed that the measure of damages herein is the difference in the value of the real property before and after the removal of the property in controversy; that there is no evidence of that difference, the judgment being based upon the testimony showing the replacement value or the value of the property in place. The contention of counsel for the defendant cannot be sustained. While the measure of damages for injury to real property in many cases, and perhaps usually, is that which is herein claimed by defendant (see Town Council v. Ladd, 37 Wyo. 419, 263 Pac. 703), no hard and fast rule can be laid down for all cases. The primary object is to determine the amount of the loss, and whatever rule is best suited to that purpose should be adopted. Big Five Mining Company v. Ditch Company, 73 Colo. 545, 216 Pac. 719; Langdon v. City of New York, 133 N. Y. 628, 31 N. E. 98, 17 C. J. 885. Fixtures, such as are involved in the case at bar, have a separate value apart from the realty on which they stand, and the loss can, we think, be much more readily determined by fixing such separate value than in any other way. In 8 R. C. L., p. 485, it is said, after stating the ordinary rule of measure of damages in cases of injury to real estate:

"On the other hand the value of the property destroyed, or the cost of restoring or replacing such property, is the proper measure of damages for the destruction of buildings, fences, and other improvements, which may at once be replaced, where the exact cost of restoring the property destroyed is capable of definite ascertainment, and where there is no damage to the realty itself."

In 4 Sutherland on Damages (3rd Ed.), page 2967, in speaking of property similar to that involved here, it is said:

"If the thing destroyed, although it is part of the realty, has a value which can be accurately ascertained without reference to the soil on which it stands or out of which it grows, the recovery may be of the value of the thing thus destroyed, and not of the difference in the value of the land before and after such destruction. By value in such case, is meant the actual, not the market, value. The real value of a building is to be ascertained by taking into account the original cost and the cost of replacing it, and making allowance for depreciation from use, age and other like causes, as the condition in which it was required."

In Silva v. City Council, 46 Okl. 150, 148 Pac. 150, 153, it was said:

"Ordinarily the measure of damages for destroying and removing buildings from real estate to which they are attached as a part thereof is what it would cost to replace them, not exceeding the value of the entire property."

What is true of a building is, of course, true of fixtures, such as are involved in this case. And see, further, Holland Furnace Company v. Pope, 204 Iowa 737, 215 N. W. 943; Beloit Iron Works v. Lockhart, 294 Pa. 376, 144 Atl. 283; Sanders v. Lefkovitz, (Tex. Civ. App.) 292 S. W. 596; 17 C. J. 885. Since the primary object is to reimburse the plaintiff for his loss, he has no right to be placed in a better position than he would have been, if the property in question had not been removed, and he would not, accordingly, be entitled to have property replaced in better condition and of greater value than the property removed. Hence while it was proper to show both the original cost of the property as well as the cost of replacement, the extent of the depreciation of the property, if any, should also appear and be taken into consideration. Egelhoff v. Ogden City, (Utah) 267 Pac. 1011 and cases cited; Kilgore v. Lyle, 30 Okl. 596, 120 Pac. 626; Anderson v. Miller, 96 Tenn. 35, 33 S. W. 615, 31 L. R. A. 604, 54 Am. St. Rep. 812; Sutherland, supra; 17 C. J. 886. In fact, it was held in the case of Chicago R. I. & P. Ry. Co. v. Galvin, 59 Okl.

258, 158 Pac. 1153, L. R. A. 1917A, 365, that testimony of the cost of replacement is competent only when the original cost and the depreciation from use, age and other cause is also shown. If the property removed, however, is as good as new, deterioration or depreciation will not be deemed important. Hearn v. McDonald, 69 W. Va. 435, 71 S. E. 568. Nor will computation to a nicety be made of the difference in value between the old and the new. J. W. Paxton Co. v. Cumberland Co., 201 Fed. 656; Knoche v. Pratt, 194 Mo. App. 309, 187 S. W. 578.

■ We shall, accordingly, review the testimony in the case, to the extent necessary, in the light of these principles of law. But before proceeding we should mention that the property in question was removed within about 16 months after having been installed, and that the plaintiff testified that the fixtures were in "perfect" condition at the time of the removal. Three matters were necessary to be determined. The value of the heating plant and plumbing; the value of the wiring and accessories; and the value of the doors, windows and other woodwork removed from the building.

(a) As to the heating plant and plumbing. The witness Campbell was called. It is claimed that he was incompetent to testify on this matter, or as to the value of the electric wiring removed. We cannot concur in this contention, for he stated that he had been a general contractor in constructing buildings for the period of seventeen years, and during that time he must have become acquainted with the values to which he testified. He stated that he was the contractor who made, or caused to be made, the alterations in the building in the fall of 1925, when it was changed into a theater. He said that the replacement value of the plumbing and heating apparatus was $2300, based upon a plant not any better than the one removed. He was asked: "And would that system that you have given the value of be identical and no better or different than the system that the building contained? A. It wouldn't be any better, it

would be as close as I could get it, what it was in the first place." The witness Reed testified mainly to the value of the heating plant removed, fixing its value in place at the sum of $1500. He admitted on cross-examination that the boiler was damaged, and estimated the depreciation at the sum of $75. The witness further stated that when fixtures are removed, the second-hand value thereof is about one-half of what it is when in place in the building. The witness Whittington testified that he made a bid of $2000 to replace the heating plant and plumbing removed from the building, and that this estimate was based on replacement of the same size of a boiler and on an installation about the same as the old. The plaintiff offered to prove by this witness that the original cost was about $3500, but this offer was erroneously rejected. He testified to the value of each of the items connected with the heating plant and the plumbing as second hand property; that is to say, after its removal from the building, and tabulated the value of the whole at the sum of $577.40. On the sheet showing the tabulation is a statement that the cost of installation was about $175, but his testimony did not cover this point. Nor did he testify to the value of the asbestos which covered the steam pipes.

The court in its judgment fixed the value of the heating plant and the plumbing, including asbestos and the cost of installation, at the sum of $677.40. It is not possible to determine how the court arrived at this figure, but it is evidently based largely upon the second-hand value to which the witness Whittington testified. This was clearly error. The value of the property removed would naturally be much more in place than as removed, and the witness Reid in fact so testified. The lowest value of the heating plant shown by the testimony is arrived at in the following manner: The testimony of the witness Whittington fixed the value after removal and as second-hand material at the sum of $577.40. This testimony could not be taken as the value in place, as already indicated. But it may be taken

in conjunction with the testimony of the witness Reid, who stated that the second-hand value is about one-half of the value of the material in place. Hence the combined testimony shows the value to have been at least $1154.80, leaving out the value of the asbestos, which was not shown as a separate item.

(b) Electric wiring. The witness Campbell testified that he made an estimate of the electric wiring that had to be replaced and which had been removed from the building, and figured the replacement value at $506.00. The witness did not go into sufficient details, so as to make his testimony altogether satisfactory. The plaintiff testified that all switches, fuse plugs, panels, one large panel and about two hundred feet of wiring had been removed; that the wiring had been cut off where the switches had been, making rewiring difficult and more expensive. The witness Lewis testified that switches are ordinarily included in wiring, that "roughing in ready for fixtures includes switches." We may gather from the testimony that the wires and switches were fastened to the building. The witness further said that he replaced some of the switches and some of the wiring, of the value of $280.00; that a number of switches were not replaced by him; that none of the replacements made by him included any "electric fixtures," meaning, evidently, to distinguish the things replaced by him from removable fixtures. There is nothing in the record contradicting his testimony, and we cannot understand how, in the face thereof, it can be contended that trade fixtures only were removed or that the court was right in allowing nothing on this item. We think that at least $280 should have been allowed.

(c) As to the doors, windows, etc. The court allowed the sum of $858.80. The witness Campbell testified in detail as to the replacement value of the property and fixed it at the foregoing sum. It is objected that some of the property, mainly doors, originally put into the building, came from the Whitney theater, where they had been for

two or three years, and that this fact was not taken into consideration. The witness Campbell, however, stated that the value of these doors was not less than new doors. He was also asked the question: "What would be the value of those fixtures, doors, and so forth, to which you have just testified, in the condition it was in February, 1927, at the time of the removal?" The witness answered that it was the sum of $858, exclusive of the dressing room, from which property was removed of the value of $107.00. Counsel for the defendant did not choose to ask the witness whether the doors and other items at the time of the removal were in about the same condition as new, and yet that must necessarily be inferred from his testimony. In addition to that, we must bear in mind the fact that the property removed was put into the building only about sixteen months previously, and further, that the plaintiff's testimony given on the former trial, which under agreement was made a part of the testimony in this case, showed that the property before its removal was in "perfect" shape. Hence, though Campbell testified that the replacement value which he fixed was based on new material, we cannot say that we ought to reverse the finding of the court on these items because of the claim that depreciation was not taken into consideration. The record fails to show any details as to the dressing room and we cannot tell whether that should be considered as a trade fixture or not.

While the plaintiff was forbidden to remove electric wiring, heating plant and plumbing, nothing specifically is said in the contract as to the doors, the windows, including transoms and transom glasses, and other woodwork, and the right to remove must accordingly depend upon the law on that subject. It is contended that the doors and some transoms and transom glasses removed from the Whitney theater and installed in the Iris theater, the plaintiff's building, were trade fixtures and removable as such. No authority to that effect has been cited and we have found none. The fact that these doors and transoms had been

used in another theater can of itself be of no particularly probative value on this point. Doors and windows, including transoms, ordinarily at least are a part of the real estate when affixed and are not removable by a tenant. State v. Elliott, 11 N. H. 540; Walker v. Sherman, 20 Wend. (N. Y.) 636; 26 C. J. 663, note 9 (b). While the evidence is not altogether clear as to the condition of the building at the time Mulock entered under his lease, it appears that it contained two stores, with doors, windows and plate glass; the doors and windows put into the building by the tenant seem, accordingly, to have taken the place of others already affixed, so as to fit it better for theater purposes. It is generally held that a fixture substituted by a tenant for another fixture which was upon the premises at the time of the making of the lease cannot, ordinarily, be removed by him if the original fixture has been injured or permanently removed, since the effect of the removal of the substituted fixture would be to leave the premises in worse condition than when he took it. 26 C. J. 700. The tenant in the case at bar agreed in his lease, that he received the premises in good condition and that he would redeliver it in the same way, ordinary wear and tear excepted. He stripped the building and boarded up the openings where the doors and windows had been. The removal thereof left the property, accordingly, in a maimed condition and when that is true the right of removal is denied. 26 C. J. 700. In the case of Alden v. Mayfield, 163 Cal. 793, 127 Pac. 44, 45, 41 L. R. A. (N. S.) 1022, Ann. Cas. 1914A 258, it was held that heavy plate glass windows and marble installed by a tenant on the front of a store building cannot be regarded as trade fixtures which he was entitled to remove, where removal exposed the interior of the building, though it was accomplished without wrenching nails, breaking beams, or weakening the building. The court said in part:

"Their removal necessarily, and against any evidence to the contrary, was the removal not of a fixture but of a portion of the building itself—the very front of the store. By such removal the building itself ceased to be an inclosure, and was open to intruders and the elements. * * * They were not trade fixtures nor trade ornaments. They constituted a part and an important part of the building itself. Concededly a beautiful store front of plate glass and marble may be expected to exercise a trade attraction superior to unkempt windows and dirty wood, but the plate glass and stone front do not for this reason suffer conversion from their true character as part of the building, into a mere trade ornament."

In the case of Excelsior Brewing Company v. Smith, 125 App. Div. 668, 110 N. Y. S. 8, affirmed in 198 N. Y. 519, 92 N. E. 1084, it appears that alterations had been made in a building similar to those in the case at bar, and the court said:

"The alterations and changes made in the front and side walls of the building, by which the doors and their frames therein were removed, the openings enlarged, and the inclosures and doors extended 30 inches into the street * * * did not constitute such a movable fixture or trade fixture as, under the provisions of the lease or the legal right of the tenant outside of the lease, the latter was entitled to remove."

We think accordingly that the contention on this point cannot be sustained.

We should, perhaps, reverse this case and send it back for a new trial upon the appeal of the plaintiff. But it is in all probability for the best interests of both parties that we should merely modify the judgment and thus end litigation which has been already sufficiently protracted. This we can do if we take (except as to the doors, windows, etc.) the lowest value of the materials in place, as shown by the testimony in this case, as a basis. We shall proceed to do so. The plaintiff will be allowed $280.00 for the value of the wiring and switches removed, the sum of $1154.80

for the value of the heating plant and plumbing, in addition to the sum of $858.80 for the doors, windows, etc., and interest on the whole sum at the rate of 7% per annum from the date of the damage to the date of the judgment, the total amounting to $2521.21, instead of $1536.20. The judgment herein is accordingly increased to the sum named, viz., to the sum of $2521.21, as of March 11, 1929, and as so increased and modified, is affirmed, costs of both appeals to be taxed to the defendant. ·

*Modified and affirmed.*

KIMBALL and RINER, JJ., concur.

### ON PETITION FOR REHEARING

BLUME, Chief Justice.

A petition for a rehearing has been filed herein by the defendant Curtis. It is claimed that the court erred in not sending the case back for a new trial instead of entering a final judgment modifying that rendered in the court below, and it seems to be the contention that this court has no power to make such modification. Section 6371, Wyo. C. S. 1920, however, gives that express power, and it is very generally exercised by the appellate courts of the country, particularly after several trials, as in the case at bar. 4 C. J. 1149, 1150, 1157, 1192. A contention similar to that now made was made in the petition for rehearing in the case of Snowball v. Maney Bros. & Co., 39 Wyo. 84, 106, 270 Pac. 167, 271 Pac. 875, 61 A. L. R. 199, but the contention was overruled.

Counsel for the plaintiff requested the court, at the trial of the case, to make findings of facts as to the value of the property removed from the premises in question. That request was objected to on the part of the counsel for the defendant Curtis. They now complain that the District Court erred in not making such findings, and ask that the

case be sent back for a new trial for that reason. The defendant made no request for any special findings and did not assign the failure to do so as error. If it is permissible in any case for a party to take advantage of the noncompliance of a court with a request of an opponent, it ought not to be permissible under the circumstances here. Moreover, the court made findings of fact as to the value of the property removed except as to the wiring. They are imperfect, it is true, but this court has held that, in order to be available as a ground for reversal, the imperfection in the findings should have been called to the attention of the trial court in order that it might have had an opportunity to make any necessary corrections. Hilliard v. Oil Fields, 20 Wyo. 201, 122 Pac. 626; Sewall v. McGovern, 29 Wyo. 62, 211 Pac. 96. This the defendant failed to do. Moreover, the whole record was brought here for review. It discloses what the minimum amount of judgment against the defendant should have been, and the imperfections in the findings could not alter that fact, and would offer no reason for sending the case back for a new trial instead of modifying it in this court. See Hilliard v. Oil Fields, supra. We are inclined to believe, as indicated in the original opinion, that if any prejudice resulted from our action in modifying the judgment instead of sending it back for a new trial, it was to the plaintiff and not to the defendant. We find no reason for a rehearing and the same must accordingly be denied.

*Rehearing Denied.*

KIMBALL and RINER, JJ., concur.