NORTH CENTRAL GAS COMPANY and
White Pipeline Construction Company,
Appellants (Defendants below),

v.

Maude C. BLOEM, Appellee (Plaintiff below).

No. 3066.

Supreme Court of Wyoming.

Nov. 20, 1962.

R. R. Bostwick, of Murane, Bostwick & McDaniel, Casper, for appellants.

G. Joseph Cardine, Casper, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiff sought some $19,000 damages for the destruction of her home, furnishings, and personal belongings in an explosion and fire occurring August 22, 1959. She joined as defendants the company which had furnished her natural gas and the company which had performed certain work in the maintenance of the service line. The case was tried to a jury with resulting verdict for plaintiff and judgment for $10,654, and defendants have appealed, urging that the trial court erred (1) in applying the doctrine of res ipsa loquitur to the facts, (2) in allowing plaintiff to argue the case on two theories, both on the doctrine of res ipsa loquitur and specific negligence, (3) in giving an improper instruction concerning the doctrine of res ipsa loquitur, (4) in the giving of improper instructions concerning the amount of damages to be awarded, and (5) in refusing to submit special interrogatories to the jury.

In general, the facts are undisputed. Defendant, North Central Gas Company, connected plaintiff's home to its natural gas distribution system in Douglas in 1949 by installing a one-inch service line which ran from the main, located in the street forty-five or fifty feet in front of the house, under the surface of the ground, entering the basement at a point immediately adjacent to the front door of the house, thence between the rafters through the basement to the gas meter behind the house. The pressure of the gas in the line up to the meter was approximately twenty pounds per square inch, and as the gas re-entered the house from the meter and pressure regulator, the pressure was about four ounces. No difficulty or trouble was experienced by plaintiff with the gas during the ten years from the time of installation until the accident, and she had not smelled escaping gas. In accordance with the practice of annually inspecting gas distribution systems for leaks, the White company on behalf of North Central took certain steps to test the Bloem service line in the summer of 1959, plaintiff contending that this occurred about ten days prior to the explosion and defendants saying it was approximately thirty days.

In July 1959, during a testing operation, the White company's employees discovered a leak near the Bloem curb, ascertained, by the method of lighting a match and causing an explosion, that it was small, and thereafter remedied it. They made other tests which required the driving of an iron pin into the ground so that with a meter arrangement they could determine whether gas was present but said that such pin did not strike the line.

Plaintiff's son stayed in the house on the night of August 21, leaving in the morning, and her sister went to the house on August 22 about 1:30 p. m. and was there some minutes, watering plants, collecting clothes, and performing various tasks. The explosion occurred between two and three in the afternoon. The Deputy State Fire Marshal said that the fire had been less than three feet down on the walls in the basement, showing that the fuel had lain from that point upwards, and that a possible point of ignition was a vent hole in the wall behind the kitchen stove. The testimony and photographs of the house indicated that the explosion and fire created extensive damage to the premises and contents.

According to drawings presented by plaintiff and conceded by defendants to correctly represent the situation, the Bloem service line ran underground in an easterly direction toward the gas meter and shortly before it reached the house rose upward approximately two feet and while still at an elevation below the surface of the ground continued on toward the gas meter through the upper portion of the basement of the house. A photograph of the house shows a semicircular cement step with foundation immediately in front of the door. There

was testimony concerning the depth of the service line, the length and position of the riser, both with relation to the house and the step, but the record contains insufficient descriptions and identifications to make this testimony meaningful. It is argued, however, by defendants that the purpose of the riser was to allow the escape of leaking gas which might be traveling along the line and that the placing by plaintiff of the step over this was negligence—that it prevented such escape and may have also been the cause of a break which occurred in the pipe at that place.

Upon investigating the cause of the explosion, the defendants found that the lines in the house carrying the four-ounce pressure held, but that no pressure could be built up in the service line. They took out the service line with a backhoe and found what appeared to be a fresh break in the threads at the foot of the riser, which break would have permitted gas to escape.

Defendants contend that they did not have exclusive control of the service line, had nothing to do with it between the time of installation and accident, that the line was located on plaintiff's property, that there was no evidence of careless construction, inspection, or user, and that plaintiff herself could well have been the cause of the explosion. They argue that the doctrine of res ipsa loquitur was not applicable under the principles laid down in Stanolind Oil & Gas Co. v. Bunce, 51 Wyo. 1, 62 P.2d 1297, 1301, 1302, and extended in Rafferty v. Northern Utilities Company, 73 Wyo. 287, 278 P.2d 605.

■ It will be recalled that this doctrine, which evolved over a long period and was named by reason of Judge Pollock's reference in Byrne v. Boadle, 2 H. & C. 722, 159 Eng.Rep. 299, 300, with the advent of modern machinery became difficult of application so that Professor Wigmore [1] suggested certain limitations: (1) the apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) both inspection and user must have been at the time of injury in the control of the party charged; and (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. These limitations were adopted in this jurisdiction by the Stanolind case. The history of res ipsa loquitur is voluminous and many available sources disclose the confusion and disagreement which have existed concerning the nature, scope, and effect of the doctrine. Prosser, Torts, p. 199 (2 ed.); 11 Syracuse L.Rev. 72 (1960); 27 Wash.L.Rev. 147 (1952); 37 Cal.L.Rev. 183 (1949); 26 Tex.L.Rev. 761 (1948); Annotation, 33 A.L.R.2d 791. We are inclined to think that some of the difficulties in the field have arisen because tort cases were often tried to a judge at the time of the origin of the concept whereas now they are most frequently tried before juries. In the jury trial of such cases one of three situations may arise: (1) There will be a failure of proof as to one or more of the prerequisites; (2) the evidence will clearly establish that on the basis of common experience the doctrine should apply; or (3) there will be substantial evidence, subject to conflicts or contrary inferences, which shows the prerequisites have been met. In the first of these the court should forbid reference to the subject; in the second the court should instruct that the doctrine applies; and in the third the jury should determine under proper instructions whether or not the prerequisites have been met. ·

■ The instant case was one falling within the third of the mentioned categories. There was room for logical argument that the court was in error, but it is our view that there was substantial evidence presented which fully warranted the trial court in instructing upon the doctrine and submitting the matter to the jury for final determination on the subject. Seneris v. Haas, 45 Cal.2d 811, 291 P.2d 915, 924, 53 A.L.R.2d 124; Tallerico v. Labor Temple Association,

[1]. 9 Wigmore, Evidence, pp. 380–382 (3 ed.).

181 Cal.App.2d 15, 4 Cal.Rptr. 880. See Rafferty v. Northern Utilities Company, supra.

■ Counsel urges that the court should not have permitted argument to the jury on both the question of specific negligence and the doctrine of res ipsa loquitur. We are unadvised of what was said to the jury or whether or not there was a timely objection since the proceedings following the taking of the evidence were unreported. It is elementary that the record is essential to the raising on appeal of error in respect to the argument of counsel. Howland v. Local Union 306 UAW–CIO, 331 Mich. 644, 50 N.W.2d 186; 3 Am.Jur. Appeal and Error §§ 603, 655; 4A C.J.S. Appeal & Error § 713.

■ Defendants argue that the court in giving an instruction concerning the applicability of the res ipsa loquitur doctrine failed to say that defendants' control must be "exclusive." Since no objection on this ground was made to the trial court, it cannot be considered on appeal. Rule 51, Wyoming Rules of Civil Procedure; Drummer v. State, Wyo., 366 P.2d 20, 23, 24.

■ At the time of presenting the instructions, defendants offered five interrogatories seeking to have the jury make findings concerning the negligence of the respective parties at different times during their relationship. The rejection of this request is here presented as a cause for reversal. This court has held that under the statute which was the predecessor of Rule 49, Wyoming Rules of Civil Procedure, the submission or failure to submit special interrogatories was in the sound discretion of the trial court. Opitz v. Town of City of Newcastle, 35 Wyo. 358, 249 P. 799; Wallace v. Skinner, 15 Wyo. 233, 88 P. 221. The Federal authorities have been uniform in a similar result under a rule identical to our

Rule 49. 2B Barron & Holtzoff, Federal Practice and Procedure, § 1058 (1961). There is nothing in the record to indicate an abuse of discretion, and we find no error was committed in this regard.

■ Defendants insist that the evidence as to the amount of damages was speculative only and without any basis in fact. This court has indicated that the measure of damages for injury to real property is the difference between the value of the property before and after the injury, Town Council of Town of Hudson v. Ladd, 37 Wyo. 419, 263 P. 703; however, no hard and fast rule can be laid down for all cases. The primary objective is to determine the amount of the loss and whatever rule is best suited to the purpose should be adopted. Slane v. Curtis, 41 Wyo. 402, 286 P. 372, 288 P. 12, 69 A.L.R. 906. The court's instructions on the subject were not at variance with these rules. A Douglas realtor testified that he was familiar with the value of real estate there, that he had inspected the Bloem residence, and that in his opinion the house with the lots was worth $12,-500, the value of the lots being about $1,000. No objection was interposed to the opinion which he gave as to the valuation. A contractor who examined the wreckage stated that the house after the explosion was not repairable and was worth in salvage not more than $400. Although the employment of good trial practice would have elicited a better basis for the opinion evidence and the witness's answer might well have been challenged, no objection was interposed, and defendants' statement that there was no evidence as to value is without merit.

Plaintiff suggests that the amount of the judgment should be increased, but has not appealed from the judgment and cites no cases which would warrant the requested action.

Affirmed.