Gayle POTTER, and Mrs. Gayle Potter, Appellants (Defendants below),

Ned N. Tranel, Mrs. Ned N. Tranel (Defendants below),

v.

Eloise S. GILKEY, Individually and as Executrix of the Estate of S. A. Gilkey, Deceased, Appellee (Plaintiff below).

Eloise S. GILKEY, Individually and as Executrix of the Estate of S. A. Gilkey, Deceased, Appellant (Plaintiff below),

v.

Ned N. TRANEL, Mrs. Ned N. Tranel, Gayle Potter and Mrs. Gayle Potter, Appellees (Defendants below).

Nos. 4661, 4662.

Supreme Court of Wyoming.

Oct. 19, 1977.

Wade Brorby and Dan R. Price, II, Morgan & Brorby, Gillette, for Potters.

Lawrence A. Yonkee, Redle, Yonkee & Arney, Sheridan, for Tranels.

Henry A. Burgess, Burgess & Davis, Sheridan, for Gilkey.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

This is the second appeal of this case.[1] Only the defendant, Ned N. Tranel, appears to have been satisfied with the second judgment and Eloise Gilkey, plaintiff below,[2] and Gayle Potter, defendant, counterclaimant and cross-claimant below, have both appealed to this court. We conclude that

---

1. See *Tranel v. Gilkey,* Wyo., 524 P.2d 580 (1974).

2. S. (Signa) A. Gilkey was the contracting party with Tranel but died February 2, 1970, and Eloise S. Gilkey, his widow, instituted the action individually and as executrix of his estate. We shall treat her as the real party in interest and not attempt to distinguish as to whether certain acts and conversations were hers or those of her deceased husband.

the trial court has not properly applied the principles announced by us in our earlier opinion and further erred in dismissing the cross-claim of Potter against Tranel. As between Gilkey and Tranel and as between Gilkey and Potter, we think that the record is in such condition that we can make proper application of legal principles to findings of the trial court or to undisputed evidence introduced at the trial and we shall therefore modify the judgment as between those parties, but will remand the cause for further proceedings upon the cross-claim of Potter against Tranel.

The facts established at the second trial do not appear materially different from those summarized in our earlier opinion and are essentially that by written agreement dated September 30, 1968, Tranel agreed, at his sole expense and upon lands leased by him,[3] to furnish grazing, special feed as necessary, veterinary services, medicines, etc., for a Charolais breeding herd owned by Gilkey. In return for this he was to receive a percentage of the calf crop, being 40% of recordable and 50% of nonrecordable calves. He was also to be permitted to graze 125 animal units upon the Gilkey lands. Each party would retain ownership of his original cattle and his percentage of the increase. Losses of female breeding stock belonging

to Gilkey were to be replaced with "a recordable female calf of equal or better quality and Charolais percentage from Tranel acceptable to and to be branded with the brand of Gilkey at branding time." Large losses attributed to "unavoidable disaster not caused by negligence" would be shared on a 50–50 basis.

Admittedly Tranel failed to perform his part of the contract during the first winter. There was a substantial loss of livestock which on the second trial and without exception by any party the trial court found was the result of negligence on the part of Tranel and not the result of any unavoidable disaster. In February or March of 1969 Tranel secured the assistance of Potter, an adjoining rancher, to help him care for the cattle, and under date of March 19, 1969, effective February 1, 1969, Tranel entered into a written agreement with Potter whereby he subleased the lands controlled by him[4] to Potter upon a recited cash rental but retained to himself the right to run a number of cattle, including 125 Charolais breeding cows[5] upon the subleased lands with Potter undertaking at his sole expense to care for the Charolais herd in a husband-like manner. The Gilkey-Tranel agreement provided that "neither party shall assign or

**3.** The Tranel lands were held under a cash lease from one Josephine Batinovich, the exact terms of which appear to be of no present importance. It does appear that contributing to the difficulties between the parties to this action was a suit by Mrs. Batinovich to cancel her lease, which may have led in part at least to the termination of the Gilkey-Tranel arrangements.

**4.** Counsel for Gilkey in his brief states that the Tranel-Potter agreement "says nothing about Potter getting any right to graze Gilkey's Powder River Ranch, and the only reason he was allowed to go there in 1969 was because he promised to pay Gilkey for that grass, see his counsel's letter Plaintiff's Exhibit 5, Appendix C attached, which promise was not honored." The copy of the Tranel-Potter agreement, as introduced in evidence and as reproduced as part of an appendix to the Gilkey brief, purports to lease for ranching purposes "the property described in paragraph marked Exhibit A attached hereto  *  *  *" but no exhibit is attached either to the record exhibit or that attached to the brief. Attempts by this court to secure a complete copy of the agreement

were unavailing and we are forced to rely upon the admitted allegation in plaintiff's second amended complaint, identical in this respect with the allegation in the first amended complaint, "That on March 19, 1969, the Defendants Tranel and the Defendants Potter entered into a Lease Agreement, a copy of which is appended hereto as Exhibit B, *and among the lands purportedly leased by Potters from Tranels were the lands owned by the Plaintiff and her husband.* That Tranels had no legal right to lease the ranch lands of the Plaintiff and her husband." (Emphasis ours) In the absence of production of a complete copy of the agreement we think that we are justified in holding Gilkey bound by her pleading.

**5.** The agreement does not recite that these are the Gilkey Charolais cattle which are being turned over to Potter, but the record is clear that Tranel did not have any material number of registered Charolais cattle and he testified that it was the Gilkey Charolais that were turned over to Potter.

transfer this agreement without the written consent of the other party." The Tranel-Potter agreement has appended thereto a form of consent to be signed by Josephine Batinovich and Signa A. Gilkey, but no such signatures were obtained. Testimony of the parties is unequivocal that Mr. and Mrs. Gilkey refused to sign the consent or agree to Potter's substitution for Tranel as the responsible party under the agreement, although in April or May of 1969, when they first learned that their cattle were in Potter's possession, they asked Potter to continue to take care of the cattle and thereafter negotiated with him for some time concerning a formal contract for such services. No written or oral agreement was ever effected.

During the period between June 4 and October 21, 1969 Potter ran a variable number of heifers, cows and bulls upon the Gilkey lands, computed by Potter without contradiction by Gilkey to amount to 1,531.75 animal units per month (a.u.m.'s). This use was with the knowledge of Mrs. Gilkey, who testified that she had told Potter he could run 125 animals for a year, twice that many for six months, or more for a proportionately shorter period. Witnesses for Gilkey testified without contradiction that the Gilkey pasturage was worth $5 per a.u.m.

All Gilkey cattle remaining in Potter's control, including the 1969 and 1970 calf crops, were returned to Gilkey in November of 1970 after a petition for replevin had been filed in this litigation. Following return of these cattle an amended complaint was filed seeking an accounting from Tranel and Potter as to the cattle delivered, returned and lost and the payment of damages for all cattle lost and not accounted for. A second claim sought recovery of

$9,103 alleged to be the reasonable value of the 1969 grass crop on the Gilkey lands allegedly converted by Tranel and Potter through the grazing of the Potter cattle.[6] Potter counterclaimed[7] against Gilkey for the reasonable value of his services and cross-claimed against Tranel for damages growing out of Tranel's alleged failure to keep his leases in good standing and condition and had failed to abide by the conditions of the lease between Tranel and Gilkey.

At the end of the first trial, the trial court concluded that Tranel had a duty to care for the Gilkey cattle in a good husbandlike manner which he had not performed and therefore Gilkey was entitled to recover the value of the lost cattle. No one disagreed with this and we set aside the determination made by that court only on the basis that uncontradicted evidence showed a different loss and the trial court had not considered the paragraph of the contract providing that a lost cow should be replaced with a recordable female calf. We directed the court to consider that paragraph, keeping in mind that Tranel had made no effort to make such replacement.

Upon the first trial and with respect to the Potter claims, the trial court found that Potter took possession of the cattle on or about April 1, 1969 and concluded that while there was no agreement as to the amount of compensation for running plaintiff's cattle, Potter was entitled to be paid a reasonable sum which the court found to be $11,630. We sustained this action in all respects except that we could find no basis for the figure $11,630 and directed that either with or without additional evidence the trial court determine the reasonable

6. A second amended complaint, filed in the district court after remand, does not represent any real change from the amended complaint upon which the action was first tried, the only change being to name Mrs. Tranel and Mrs. Potter as parties defendant. The judgment entered below dismisses the action as to them and no error is assigned.

7. This reference is to the amended counterclaim filed by Potter after remand of the cause. In his first counterclaim Potter had sought to

recover from Gilkey on the basis of an express agreement. Upon the first trial the court found against this contention but as we shall subsequently set forth did attempt to allow recovery for the reasonable value of the services, and we sustained the right to such recovery. The later counterclaim is consistent both with the theory of the first judgment and with the directions of this court. See *Tranel v. Gilkey,* 524 P.2d at 584.

value of Potter's services, subject to such offsetting considerations as might appear, including the failure of Tranel to deliver registration papers upon the Gilkey cattle.

Following the second trial, the trial court entered new findings of fact and conclusions of law. It is found that the agreement was entered into between Gilkey and Tranel, cattle were delivered, and Tranel had failed to exercise reasonable care so that losses which were incurred between January and May of 1969 were not caused by an unavoidable disaster; and that 71 cows, 50 calves, 1 steer and 2 bulls were lost and the total value of such loss was $26,105. In computing this loss the trial court took as the damages for loss of the cows the figure $205, found by it to be the value of a recordable ¾ Charolais female calf, and rejected Gilkey's contention that the value should be fixed at $351.25, claimed by Gilkey to be the average valuation of a Charolais breeding cow. Mrs. Gilkey's appeal, No. 4662, is directed solely at this claimed error.

It is further found that Tranel about April 1, 1969 sold his cattle to Potter and assigned to him the agreement by which Tranel had been running the Gilkey cattle and the Gilkeys acquiesced in such assignment; that Potter should be entitled to the share of the calf crop which Tranel would have received, both for the years 1969 and 1970,[8] amounting to $2,600 for the first year and $6,700 for the second, or a total of $9,300; that Gilkey should also have credit of $205 for a cow which died of anaplasmosis while Potter had possession of the cattle; and that Gilkey should have the proceeds of the sale of an "open" cow sold during the year 1968. It was further found that under the Gilkey-Tranel agreement Potter was entitled to the use of Gilkey lands during 1969 so that Gilkey was not entitled to compensation therefor; that there had been a mutual termination of the agreement in November of 1970 by Gilkey and Potter so that the latter was not entitled to the Gilkey grass in that year.[9] Without any finding concerning Potter's cross-claim against Tranel, the court concludes that it should be dismissed.

Judgment was then entered that Potter pay to the "plaintiff, Mrs. Ned N. Tranel"[10] the sum of $42.95 costs incurred in his obtaining a continuance of the trial date; awarding Mrs. Gilkey $26,105 and costs as against Tranel; and awarding Potter $9,300 upon his counterclaim against Mrs. Gilkey.

The trial court's disposition of the Potter-Gilkey claims is consistent with its finding of an assignment, but it represents a substantial and impermissible variation from what we consider to be the law of the case and the directions set forth in our opinion remanding the case for further proceedings. The finding on the second trial that Tranel did not care for the cattle and that a number were lost through his negligence and not through unavoidable disaster is consistent with the findings upon the first trial, has never been attacked, and we think is amply sustained by the evidence. But the further finding that Tranel assigned the Gilkey-Tranel agreement to Potter and that the Gilkeys acquiesced in such assignment is completely at odds with the pleadings,[11] the

---

8. The court made no finding with respect to Gilkey's undisputed termination of his agreement with Tranel as of August 1, 1969.

9. This finding likewise ignores evidence as to termination by Gilkey, also the fact that had the parties followed the same schedule that was observed in 1969, the pasturage would have been used during the months of June to October, and also the fact that the original agreement was effective as of October 1, 1968, so that a full second year would have expired prior to what the trial court found to be the termination in November of 1970. It also ignores the fact that the Gilkey-Tranel agreement permitted pasturage but did not require it and

there is no evidence that Potter sought to use such pasturage during the year 1970. We therefore place no significance on Potter's alternative claim that if the case be disposed of on a theory of assignment, he should receive a cash benefit for this unused pasturage.

10. We construe this as a typographical error and that it was meant to refer to plaintiff Eloise S. Gilkey.

11. We are at a loss to understand how the matter of assignment ever entered into the case. Gilkey never pleaded it and the only hint of such a claim that we have been able to find

evidence, and with findings upon the first trial that Tranel had "abandoned" the livestock agreement and without the knowledge or consent of plaintiff had delivered the cattle to Potter; that Gilkey was not a party to the Tranel-Potter agreement and "did not agree to its terms"; and that "no firm agreement or contract, either written or oral, was ever reached between the Plaintiffs and Defendant Potter concerning Potter's possession of the Gilkey cattle." These findings were likewise not attacked, were sustained by the evidence, and established the factual basis for our direction to determine the reasonable value of Potter's services.

■ Here the finding of assignment was improper because the trial court had no authority to try any issues other than those directed by the former mandate and opinion or any that were necessary to reach a decision on the mandated issues and which had not already been decided. See *Kuhlmann v. Persinger,* 261 Iowa 461, 154 N.W.2d 860 (1967); *Van Orman v. Nelson,* 80 N.M. 119, 452 P.2d 188 (1969); *Michna v. City of Houston,* 534 S.W.2d 728 (Tex.Civ.App. 1976), reh. denied. When a case has been tried and a final judgment has been entered, any ground of recovery or defense that has not been asserted will be barred by the judgment; if on appeal the case is remanded for a determination of damages, any such ground of recovery or defense that was not urged in the first trial is barred by res judicata, *Michna v. City of Houston,* supra.

■ Our former opinion, *Tranel v. Gilkey,* Wyo., 524 P.2d 580 (1974), directed that the district court should reconsider its judgment for Gilkey and against Tranel for loss of cattle, giving due consideration to provisions of the contract. It also instructed the court to determine the value of Potter's services along with a determination of certain offsetting considerations. A finding that Potter's recovery should be based on assignment of contract rights rather than on the reasonable value of his services was outside the trial court's authority.[12] If a cause is remanded for a specified purpose, any proceedings inconsistent therewith are error, *Mefford v. Gardner,* 383 F.2d 748 (6th Cir. 1967). The proceedings herein by which a finding of assignment was determined are inconsistent with our remanding opinion.

■ If we were convinced that the finding of an assignment was proper, and resulted in a proper end to the litigation, we would be reluctant to insist upon a strict adherence to our earlier directions. But while we would agree that Potter came into possession of and began to care for the Gilkey cattle on the strength of his contractual arrangement with Tranel, which in turn was based upon a supposedly valid agreement between Gilkey and Tranel, and perhaps thought that he had undertaken the care of the cattle as Tranel's successor under the earlier agreement, the record is clear that Gilkey did not so recognize him and that his services were not continued on that basis. Although it is not impossible or even unusual for two parties, recognizing the existence of a valid contractual relationship between them, to negotiate for modifications thereof, we find it undisputed that all negotiations between the Gilkeys and Potter were based upon the expressed desire of Gilkey that Potter should continue rendering his services but that the Gilkeys were dealing with him as a new and independent party. There is nothing in the record to establish that they were substituting or attempting to substitute him in the stead of Tranel. Even though extensive negotiations arrived at no definite agreement there is no indication whatever that

---

in the record is a passing reference in Gilkey's trial memorandum that at least in 1969 Potter stood in the shoes of Tranel. No one else has by pleading or evidence sought to establish such an assignment and Tranel is the only one who in this court actively supports this finding of the court. Gilkey appears only to accept it.

**12.** See *Van Orman v. Nelson,* 80 N.M. 119, 452 P.2d 188, 189 (1969), and case therein cited, for further exposition of the rule that the district court on remand has only such jurisdiction as the opinion and mandate of the remanding court confer.

either the Gilkeys or Potter considered that the Gilkey-Tranel agreement remained in effect as between them. The termination of that agreement by notice from Gilkey's attorney to Tranel, with not even a copy to Potter, and effective as of August 1, 1969, is a clear refutation of any claim of assignment.

Nor do we believe that the trial court's finding of assignment could bring about a proper end to the litigation. The court apparently ignored Gilkey's termination and found only a mutual termination by Gilkey and Potter in November of 1970, but if there was an effective assignment of the agreement and a termination as of August 1, 1969 (and no one has disputed that point) we would be forced to find some different basis for compensation for Potter's services after August 1, 1969. The allowance by the trial judge of one-half the value of the 1970 calf crop is consistent with his theory of assignment, but his refusal to allow Potter anything for 1970 pasturage (because of his finding that the agreement was terminated in November of that year) is inconsistent with termination at that time. The Gilkey-Tranel agreement was effective as closely as might be to October 1, 1968, so that the second year thereof would have expired prior to November of 1970 and Potter would have been entitled to the pasturage for that year.

Giving all force and effect to the oft-announced rule of this court that upon appeal this court will not consider conflicts in evidence, but will consider the evidence as it appears most favorable to the prevailing party, along with any inferences which may properly be drawn therefrom,[13] but also bearing in mind that where there is no substantial evidence that gives rise to a conflict, this court has the right and duty to examine the record and reach its own independent conclusions from the substantial evidence contained in the record,[14] we can conclude only that the trial court's finding of an assignment to Potter of the Gilkey-Tranel agreement, acquiesced in by the Gilkeys, is not based upon substantial evidence, is contrary to the undisputed evidence, and does not result in a proper disposition of the action.

### Appeal No. 4661: Potter-Gilkey

This appeal shall be disposed of on the legal basis that Potter's relationship to Gilkey is not governed by the Gilkey-Tranel agreement and that he is entitled to recover from Gilkey the reasonable value of his services in furnishing full agister's services for the Gilkey herd, the determination of which necessarily involves any claims by Gilkey of defective performance by Potter. To arrive at a complete settlement of their rights and obligations vis-à-vis one another we shall also consider any other offsetting claims that Gilkey may have against Potter.

We conclude that the undisputed evidence shows that the reasonable value of the Potter services was $22,597, representing full services for 2,259.7 a.u.m.'s at a reasonable value of $10 per a.u.m. We also conclude that while Gilkey's counsel alleges deficiencies in the performance by Potter, there is no evidence in the record thereof and there is nothing to justify reduction of the award to Potter on that basis.

However, if Gilkey is not entitled to rely upon the Gilkey-Tranel agreement as furnishing the amount of compensation due Potter, similarly Potter may not rely thereon as entitling him to pasturage of the Gilkey lands to the extent of 125 animal units or 1,500 a.u.m.'s and Gilkey is entitled to offset as against Potter the sum of $7,658.75 representing the reasonable value at $5 per a.u.m. of 1,531.75 a.u.m.'s of pasturage used by Potter.

In arriving at this conclusion we are aware that the trial court has made no finding as to the reasonable value of Potter's services nor as to the reasonable value of the grass rental. We are not unmindful of the pronouncements of this and other

---

13. *LeBar v. Haynie,* Wyo., 552 P.2d 1107 (1976).

14. *In re Stringer's Estate,* 80 Wyo. 389, 343 P.2d 508 (1959), reh. denied and opinion modified, 80 Wyo. 389, 345 P.2d 786.

appellate courts that we do not sit as trier of the facts, and certainly where there is any question about the proper findings, whether on disputed or undisputed facts, we are very reluctant to intercede in that function of the trial court. Thus, even where the evidence of an expert as to the value of certain work that had to be done was undisputed and represented the only evidence of value, this court held in *Phelps v. Woodward Construction Co.,* 66 Wyo. 33, 204 P.2d 179 (1949) that it would not interfere with the amount of a jury verdict which was less than the value so fixed, indicating that the trier of the fact had the right to exercise his own judgment in fixing the amount of damages. In the present case, because of the disposition which the trial court has made of the cause, it was not necessary for it to fix the reasonable value of Potter's services, but under the disposition we make thereof, we cannot modify and suggest the proper judgment unless we make such determination.

Rule 72(i), W.R.C.P. is pertinent. It provides in part:

"When a judgment or final order is reversed, either in whole or in part, in the district court, or the supreme court, the court reversing the same shall proceed to render such judgment as the court below should have rendered, or remand the cause to the court below for such judgment or such proceedings as the appellate court may direct. * * * "

While we do not think that this rule, which is an adaptation of § 3–5318, W.C.S. 1945, contemplates that this court will in doubtful cases act as the finder of the fact, it does indicate an intention to avoid unnecessary retrials. We think that the case of *Slane v. Curtis,* 41 Wyo. 402, 286 P. 372, reh. denied 41 Wyo. 402, 288 P. 12 (1930), is helpful. There the trial judge had fixed the value of certain fixtures, found to have been converted by the defendant, and both parties appealed. This Court announced what it considered the proper rule to be for the measurement of damages and then applied those rules to the testimony which had been given and said this (286 P. at 376):

"We should, perhaps, reverse this case and send it back for a new trial upon the appeal of the plaintiff. But it is in all probability for the best interests of both parties that we should merely modify the judgment, and thus end litigation which has been already sufficiently protracted. This we can do if we take (except as to the doors, windows, etc.) the lowest value of the materials in place, as shown by the testimony in this case as a basis. We shall proceed to do so. * * * "

The amount of the judgment was accordingly increased. *Phelps,* supra, 204 P.2d at 190, considers this an exceptional case, based

" * * * on the special rule stated in 5 C.J.S., Appeal and Error, § 1932, p. 1444, which in part is as follows: 'The propriety of rendering or ordering final judgment on reversal is quite apparent where there have already been two or more trials of the cause and appellee has thus had ample opportunity to present all the evidence in his favor.' * * * "

Here, and notwithstanding that Gilkey has had every opportunity to present all evidence she wished as to the extent of Potter's services, the defects therein and contrary views as to the value thereof, she presented no evidence that in any way refutes Potter's evidence as to the services and value thereof.[15] Her counsel asserted in his trial memorandum that the calf increase had not been as much as it should had there been proper attention paid, but presented no proof thereof. Her claim upon the first appeal of this case that failure to produce registration papers resulted in loss has not been followed up by the

---

**15.** Gilkey's failure to attack the question of reasonableness in this appeal is partially based upon an acceptance of the trial court's disposition of the case but notwithstanding Potter's strong attack upon the assignment approach and his clear-cut argument that this court should modify the judgment by allowing him the full $22,957 claimed by him, Gilkey makes no contention in her brief that such a course would be improper, should we adopt Potter's theory of the appeal.

presentation of evidence at the second hearing although that point was specifically mentioned in our opinion remanding the cause. In the absence of evidence as to the defects in Potter's performance and the damages resulting therefrom, we think that we must consider Potter's evidence as not only competent but uncontradicted that he furnished full agister's services in the amount and value above stated. We therefore conclude that to remand the case for a further evidentiary hearing upon this phase would be a useless exercise in appellate abstinence.

Under the principles which we have declared, Potter is entitled to judgment against Gilkey in the amount of $22,597, representing 2,259.7 a.u.m.'s of full agister's care at $10 per a.u.m. Deducted from this will be $7,658.75, the value of pasturage for 1,531.75 a.u.m.'s, plus $42.95 special costs as allowed, leaving a net judgment in favor of Potter and against Gilkey in the amount of $14,895.30.

### Appeal No. 4662: Gilkey-Tranel

■ On her appeal from the judgment in her favor and against Tranel, Mrs. Gilkey quotes at length from authorities as to the general measure of damages for loss of bailed property, which damages are said to be the market value of the property at the time it was lost or destroyed. This would be the rule in this case were it not for the provision in the Gilkey-Tranel agreement that all losses of breeding cows, except "large losses attributed to unavoidable disaster not caused by negligence" are to be replaced by recordable Charolais female calves. Admittedly Tranel has made no attempt to deliver such recordable female calves, but the fact remains that under the contract which was the basis for Tranel's receipt of the cattle and assumption of responsibility therefor, what Mrs. Gilkey lost by reason of Tranel's defection was recordable female calves and not breeding cows. Gilkey cites no authorities that indicate that the contract provision is not proper, and 8 Am.Jur.2d, Bailments § 332, p. 1219, cited by Gilkey, recognizes that the general

rule of damages applies "in the absence of a valid special agreement to the contrary." And in the same text, § 330, at pp. 1217–1218, it is said:

"If there is a special provision in the bailment contract enlarging or limiting the bailee's liability, the damages recoverable will be ascertained in the light of such agreement. * * * "

In *United States v. Hatahley*, 257 F.2d 920, 79 A.L.R.2d 668 (10th Cir. 1958), cert. denied 358 U.S. 899, 79 S.Ct. 722, 3 L.Ed.2d 148, likewise cited by Gilkey, we find this statement at p. 923:

"The fundamental principle of damages is to restore the injured party, as nearly as possible, to the position he would have been in had it not been for the wrong of the other party. * * * "

We believe that the parties, in drafting their agreement, recognized that livestock loss could result from many causes. They felt themselves capable of determining what losses would constitute an unavoidable disaster, but did not want to undertake a definition of Tranel's responsibility and thought it sufficient to impose upon him a responsibility for the breeding cows that would not require specific proof of negligence. They arrived at a solution which perhaps imposed upon Tranel a greater responsibility than in the ordinary agisting agreement, but at the same time Gilkeys gave up something as to the compensation which might be claimed in case of loss. We see nothing improper about this and think that the legally compensable wrong suffered by Gilkey was the failure of Tranel to replace the lost cows with proper female calves. It is clear that those replacement calves had to have some special characteristics, but, so far as the record discloses, the trial court has determined the market value of female calves of that description. The replacement of the cows with these calves within the contemplation of the contracting parties at the time they made their agreement, would have permitted the Gilkeys to continue the development of their herd according to their plans. We find nothing in the record to establish that the loss was one

which could not be compensated for by determination of the market value of qualifying female calves, which is exactly what the trial court has done, and no complaint has been registered in this court or in the trial court that it failed to make a proper determination of that value. Probably the exercise of the contractual right to enforce replacement was delayed by Mr. Gilkey's death, but we must hold that the contractual provision should be given full application and therefore sustain the judgment of the district court upon the appeal of Gilkey.

 We are aware that affirmance of the Gilkey judgment, after we have eliminated from consideration of the Potter-Gilkey claims any theory of assignment of the Gilkey-Tranel agreement, leaves Mrs. Gilkey without liability to Tranel for any part of the 1969 calf crop and may permit her to receive compensation for the 1969 pasturage, which she under the agreement gave in return for services. However, Tranel has not appealed from the judgment and apparently he was willing to take his chances as to liability on his part to Potter, not yet established. Without an appeal by Tranel we see no basis upon which we can interfere with Gilkey's judgment against him.

This leaves for disposition the claim of Potter that his cross-claim against Tranel should not have been dismissed. The dismissal was not based on findings of any kind but resulted, we may assume, from adoption of the theory of assignment. As we understand Potter's argument, it is that he has already paid Tranel cash rental for the Gilkey grass and since he is being charged therewith in his claims against Gilkey, he is entitled to reimbursement of that amount from Tranel. He did testify that he made payment to Tranel for Gilkey grass, but we cannot from the record determine what part of payments by him to Tranel was in whole or in part for Gilkey grass. It would appear that use of the Batinovich lands, the extent of and rental for which do not appear in the record, should have had some material bearing on this cash rental payment. We hold that if

Potter did make payments to Tranel which were definitely for the use of Gilkey grass, he is entitled to recovery thereof from Tranel on the basis that he had paid for something that he did not receive and therefore there was a failure of consideration. The facts should be determined by the trial court.

The judgment of Potter against Gilkey is modified to the extent that Potter have judgment against her for the amount of $14,895.30 and as so modified is affirmed. The judgment in favor of Gilkey and against Tranel in the amount of $26,105 is affirmed. The cause is remanded for the purpose of permitting the trial court, with such new evidence as it may require, to dispose of the cross-claim of Potter against Tranel.